[Civ. No. 26720. Second Dist., Div. Three. Dec. 27, 1963.]

MITCHELL J. HANNA et al., Plaintiffs and Appellants, v. CHARLES LEDERMAN et al., Defendants and Respondents.

James O. White, Jr., Thomas Menzies, J. Laurence K. Garvin, Hindman & Davis and E. Eugene Davis, Jr., for Plaintiffs and Appellants.

Eugene S. Ives, Alfred Gainsley and Martin J. Kirwan for Defendants and Respondents.

FORD, J.—The plaintiffs, tenants of a building owned by the defendants, have appealed from a judgment for the defendants in an action to recover for damages to personal property caused by water.[1] The building was located at 1024 Santee Street in the City of Los Angeles. A fire which originated in a refrigerator on the seventh floor caused three heads of the fire sprinkler system to open. The water ran for a substantial period of time and flooded the building before it was shut off early on the morning of January 29, 1954. The system was not equipped with a device which would sound an alarm as soon as water issued from a sprinkler head.

With respect to each tenant, three causes of action were pleaded. The first cause of action contained an allegation that at all times mentioned in the complaint, Section 94.30312 of the Municipal Code of the City of Los Angeles provided as follows:

"§ 94.30312. AUTOMATIC ALARMS.

"Every fire sprinkler system, except a thermostatically-operated system, shall be equipped with an 'Approved' auto-

---

[1]Some of the plaintiffs also sought to recover damages for loss of profits.

matic alarm valve or alarm device arranged to operate when there is a flow of water in any part of the sprinkler system which would be equal to, or greater than the flow of water from one sprinkler head. The alarm valve or device shall operate a water motor gong or electric gong of not less than ten inches (10″) in diameter. Alarm valves are not required on systems having 25 or less sprinklers.

"On thermostatically-operated systems an 'approved' sounding device shall be provided which will actuate an alarm from the thermostatic system independent of flow of water in the system.

"Where electric gongs or bells are used, the necessary attachments for their operation shall be 'Approved' equipment and the current supply shall be furnished from a source not controlled by the main service switch of the building."

In the first cause of action it was further alleged that the defendants "negligently, carelessly and in violation of law, managed, maintained and controlled within the ... building a fire sprinkler system containing more than 25 sprinklers, which was not a thermostatically-operated system, which system did not contain any alarm valve or device or sounding device or electric gong or any other warning device whatsoever and which building did not contain any night watchman or other warning personnel whatsoever...."

The second cause of action of each tenant was identical with the first, except that the ordinance was not pleaded. Under the third cause of action liability was predicated upon the allegation that the defendants "wilfully, wantonly, recklessly and negligently and with utter disregard of the consequences of their acts, exclusively maintained, used and controlled a water sprinkler system ... in such a dangerous and hazardous condition, and without the normal and necessary warning and safety devices, as to cause large volumes of water to forcibly enter, invade and trespass upon" the personal property of the plaintiff tenant.

In each lease executed by the defendant lessors and the plaintiff tenants, there was the following paragraph:

"Lessee, as a material part of the consideration to be rendered to lessor, hereby waives all claims against lessor for damages to goods, wares and merchandise, in, upon or about said premises and for injuries to persons in or about said premises, from any cause arising at any time, and lessee will hold lessor exempt and harmless from any damage or injury to any person, or to the goods, wares and merchandise of any

person, arising from the use of the premises by lessee, or from the failure of lessee to keep the premises in good condition and repair, as herein provided."

The position of the plaintiffs was that the damage to their property from water would have been avoided or minimized if there had been a device to give an alarm as soon as the water escaped through the sprinkler heads. There was substantial evidence that, if section 94.30312 of the Municipal Code was applicable to the defendants' fire sprinkler system, that system did not comply therewith. Section 94.30312 became effective on June 18, 1953. The building had been erected a number of years prior to that date. The trial court sustained the defendants' objection to the introduction of that ordinance on the ground that it was not applicable to the defendants' building and sprinkler system which were in existence prior to June 18, 1953.

Portions of the findings of fact of the trial court were as follows: 1. When the building was purchased by the defendants in 1950, it "contained the same water supply and fire protection system as was present" at the time the plaintiffs sustained their losses. 2. "[N]o evidence having been received as to the Municipal Code of the City of Los Angeles in effect at the time of the loss ... no finding is made as to what the Municipal Code provided as to automatic alarms at said time." 3. "No evidence having been received as to the law that was applicable to the fire sprinklers in the building of the defendants the Court finds that the defendants were not in violation of any law, the management, maintenance and control of the fire sprinkler system in the building of the defendants [sic]." 4. " [B]y reason of the finding in favor of the defendants on the third, further and separate defense [based on the paragraph contained in each lease which paragraph has been set forth hereinabove] ... as set out in the answer of the defendants it is not necessary to make a finding on the issue of damages on the first cause of action of any of the plaintiffs ... [or as to] the allegation of negligence as contained in the second cause of action of each of the plaintiffs herein."

The first problem to be resolved is whether the trial court correctly determined that section 94.30312 of the Municipal Code did not govern the defendants in the use and maintenance of their fire sprinkler system at the time the plaintiffs suffered their losses. ■ "An ordinance is not to be given a retroactive effect unless such intention clearly appears. It is

to be construed according to the intention of the legislative body enacting it; and in ascertaining that intention, the courts must presume a prospective and not a retroactive operation was intended, unless such presumption is negatived by express language.'' (*Stanford* v. *Bailey Incorporated,* 132 Cal.App.2d 725, 731 [282 P.2d 992].)

To aid the trial court in determining the applicability of section 94.30312, the plaintiffs offered in evidence portions of section 94.78 of the Municipal Code, which section was in force and effect from February 15, 1943, to June 18, 1953. Section 94.30312 became effective on the latter date. Portions of section 94.78 are set forth in the footnote.[2] The court sustained the defendants' objection to the introduction in evidence of a certified copy of such portions of section 94.78. But it is clear that that section was the immediate predecessor of section 94.30312. If the latter section was susceptible of the interpretation that it was applicable to fire sprinkler systems which were in existence when it became effective on June 18, 1953, then the trial court should have considered the superseded section because, as in the case of statutes (See

---

[2]''§ 94.78. STANDARD AUTOMATIC SPRINKLER SYSTEM:

''Every automatic sprinkler system shall comply with the provisions of this section and shall be constructed, installed and maintained, as hereinafter specified in this section and for the purpose of this article any such sprinkler system shall be deemed to be a 'Standard' Automatic Sprinkler System.

''(a) Definitions. For the purposes of this section the following terms are hereby defined as follows:

''1. 'Automatic Sprinkler System' or 'Sprinkler System' is an arrangement of one or more pipes with heads or outlets, installed in any building for the purpose of providing a water spray to quench fires or retard the spread of fires in any such building or structure. . . .

''(o) Alarm System

''1. Every automatic sprinkler system having a total of more than 25 sprinkler heads shall be provided and equipped with an alarm system as hereinafter specified in this subsection.

''2. Every such alarm system shall have an alarm valve installed on each main water supply pipe and so arranged that a flow of water through same or through any sprinkler head or through any drain pipe will operate a mechanical gong, an electric gong or both.

''3. Any such electric gong shall be operated by approved bell ringing transformers which shall be installed as a source for electric current and shall be located on the electric current supply side of the main service electric switch of the building and shall be installed in accordance with the provisions of article 3 of this chapter.

''4. Any such alarm valve, gong, or transformer shall be of a type approved by the National Board of Fire Underwriters, and shall be installed and arranged to comply with the rules and regulations of said Board.''

*Evola* v. *Wendt Constr. Co.,* 170 Cal.App.2d 21, 24 [338 P.2d 498]) the ordinance is to be read in the light of its historical background and evident objective. (See *H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 320 [301 P.2d 28].)

■ It is to be noted that section 94.78 provided that *"Every automatic sprinkler system* shall comply with the provisions of this section and shall be constructed, installed and *maintained,* as hereinafter specified in this section. . . ."* (Italics added.) The inclusion of ''[e]very automatic sprinkler system'' and the reference to the requirement that such a system shall be ''maintained'' in accordance with the provisions of the section make it clear that the legislative intent was that the section should govern existing systems as well as those thereafter to be installed. (See *Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 412 [218 P.2d 17]; *Fay* v. *Allied Stores Corp.,* 43 Wn. 2d 512 [262 P.2d 189, 191-192].) In the light of the proper interpretation of that section which was superseded by section 94.30312 on June 18, 1953, it cannot be concluded that by virtue of the enactment of the latter section, which also had reference to ''[e]very fire sprinkler system,'' all existing systems were intended to be exempted from the stated requirements and that thereafter only newly installed systems had to be equipped with alarm devices.[3] (See *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409, 415.) But, even if it be concluded that the refusal of the trial court to consider the provisions of superseded section 94.78 was not error, the language of section 94.30312 to which reference has been made sustains the determination that the latter section was applicable to the defendants' fire sprinkler system at the time the plaintiffs sustained their losses. The exclusion of the evidence of the provisions of section 94.30312 of the Municipal Code constituted error.

■ As stated in *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409, at page 416: ''A municipality, under the power delegated to it by the state, may enact ordinances creating

---

[3]Counsel for the plaintiffs also offered in evidence a provision which was stated by him to be a portion of the Municipal Code. The provision was as follows: ''Scope. (a) Prohibited Act. No person shall construct, install, remove, alter, repair, use or maintain any plumbing, fire sprinkler system or standard pipe except as provided by this code.'' Plaintiffs' counsel then stated: ''Now that to me means just what it says. 'No person shall maintain any fire sprinkler system except as provided by this code.' '' However, the plaintiffs failed to show that that provision was a part of the Municipal Code at the time of the occurrence of their loss as a result of water damage.

duties for the protection of persons and property, and it is very generally held that those who violate such ordinances are liable for resulting injury to others. ▇ The standard of conduct of a reasonable man may be established by a statute or ordinance. ▇ The violation of such a legislative enactment may be negligence in itself if the plaintiff is one of a class of persons whom the statute was intended to protect and the harm which has occurred is of the type which it was intended to prevent. (*Harris* v. *Joffe*, 28 Cal.2d 418 [170 P.2d 454]; *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]; *Muir* v. *Cheney Bros.*, 64 Cal.App.2d 55 [148 P.2d 138]; 45 C. J. §§ 100, 105, pp. 717, 723; 1 C.J.S. § 12, p. 996; Prosser on Torts, § 39, p. 264.)"

▇ Each lease contained an exculpatory provision which has been set forth hereinabove. The effect of that provision must be determined in the light of section 1668 of the Civil Code. That section states: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Since the claim for damages because of negligence embodied in the first cause of action of each tenant was predicated upon the alleged violation of section 94.30312 of the Municipal Code, the exculpatory provision could not be a defense to that cause of action if the evidence showed such violation to be a proximate cause of the tenant's loss. (See *Mills* v. *Ruppert*, 167 Cal.App.2d 58, 62-63 [333 P.2d 818].)

The judgment is reversed.

Shinn, P. J., and Files, J., concurred.