SARLOT–KANTARJIAN, a General Partnership composed of Raymond R. Sarlot and Karl G. Kantarjian, Plaintiff/Appellant,

v.

FIRST PENNSYLVANIA MORTGAGE TRUST, a voluntary association organized under the laws of the Commonwealth of Massachusetts and Associated Advisers, Inc., a Delaware Corporation, Defendants/Appellees.

No. 77–3232.

United States Court of Appeals, Ninth Circuit.

July 2, 1979.

new five-year period was made applicable to everyone who had ever held an interest in the fund.

Jerome Zamos, Zamos, Hofmann & Roberts, Santa Barbara, Cal., for plaintiff/appellant.

Fred F. Gregory, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants/appellees.

Before HUFSTEDLER and WALLACE, Circuit Judges, and FITZGERALD *, District Judge.

FITZGERALD, District Judge.

Sarlot-Kantarjian, a partnership engaged in real estate development, appeals from a summary judgment entered in favor of First Pennsylvania Mortgage Trust, a real estate investment fund, in an action for recovery of usurious interest and for declaratory relief. The district court concluded that the parties' selection of Massachusetts law in the loan agreement was valid and binding although the interest rate allowable under Massachusetts law was greater than the maximum permitted under California law. We affirm.

Sarlot-Kantarjian (S–K) is a California general partnership consisting of Sarlot, a contractor, and Kantarjian, a lawyer, both knowledgeable and experienced in construction and real estate ventures. In September 1973, S–K sought construction financing for a proposed 66-unit condominium project to be built in the Bel Air section of Los Angeles. S–K engaged a mortgage company to assist it in obtaining a two year construction loan of $3.2 million dollars at a rate of 5% over the prime rate. In October 1973, the mortgage company was notified by Associated Advisers, Inc., a New Jersey firm employed by defendant First Pennsylvania Mortgage Trust, that S–K's loan application had been conditionally approved.

First Pennsylvania Mortgage Trust is a real estate investment trust organized under the laws of Massachusetts for the purpose of lending money for construction or improvement of real property. The Trust maintains its principal place of business in Boston and has never maintained an office or any employees in California.

In November 1973, First Pennsylvania's Board of Trustees met in Boston, considered and approved a loan to S–K. A commitment letter was sent to the mortgage company setting forth the terms and conditions of the proposed loan to S–K. The letter fixed Boston as the locale for the closing of the loan and repayment of any monies lent. It further specified that all "documents executed in connection with this loan are and shall be governed by and construed according to the statutes and laws of Massachusetts." S–K signed the commitment letter, and Sarlot has acknowledged that he read the quoted language, understood it and intended Massachusetts law to apply.

---

* Honorable James M. Fitzgerald, United States District Judge, District of Alaska, sitting by designation.

After the commitment letter was received by Associated Advisers in early December, Pennsylvania Trust engaged California legal counsel to prepare the loan documents. These documents were submitted to S–K for review prior to closing of the loan. Sarlot and Kantarjian then travelled to Boston for the closing and to obtain the initial disbursement of funds. The closing was delayed a day pending resolution of certain engineering and technical problems relating to the project, and negotiations regarding these problems were held in New Jersey with Associated Advisers. The loan closed in Boston on December 21, 1973 with the execution of an amended commitment letter and the various loan documents.

The loan proceeds were disbursed out of Pennsylvania Trust's operating account in Boston into S–K's transfer account in Boston. S–K also maintained a disbursement account in a California bank to facilitate payment of the project's construction expenses.

In May and June 1975, the parties agreed to modify the December 21, 1973 loan by reducing the interest rate and the amount of payments required to obtain a release of the mortgage lien on constructed condominium units. At the same time, the parties agreed to a second loan in the amount of $250,000. All loan repayments by S–K were paid into Pennsylvania Trust's operating account in Boston and the entire loan has been satisfied.

Pennsylvania Trust maintains that the interest paid on the combined total of the two notes was 13.47% averaged over the life of the loan, while S–K contends that the actual effective rate of interest approached 18%. It is conceded, however, that the interest charged exceeds 10%, and therefore would be usurious under California law.

■ California choice of law rules properly govern the question of whether the contractual choice-of-law clause is valid, for it is well established that the conflict of law rules to be applied by a federal court in a diversity case must conform to those prevailing in the state in which the federal court is located. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Strassberg v. New England Mutual Life Insurance Co.*, 575 F.2d 1262, 1263 (9th Cir. 1978). Under California law, contractual choice of law provisions will be respected unless the transaction falls into either of two exceptions outlined by the Restatement 2d, Conflict of Laws, Section 187:[1] 1) the chosen state has no substantial relationship to the parties or the transaction, or 2) application of the law of the chosen state would be contrary to a fundamental policy of the state. *See Smith, Valentino & Smith, Inc. v. Superior Court of Los Angeles Co.*, 17 Cal.3d 491, 494, 131 Cal.Rptr. 374, 376, 551 P.2d 1206, 1208 (1976). Neither of the exceptions applies in this case.

■ As the facts demonstrate, Massachusetts had very significant contacts with the transaction at issue here. The making of the contract and its performance, i. e. repayment of the loan, both took place in Massachusetts. Moreover, the funds were disbursed in Massachusetts. These factors, as well as the Trust's location in Massachusetts, support a finding of substantial connection with Massachusetts even though the loan was secured by real estate in California. *See Ury v. Jewelers Acceptance Corp.*, 227 Cal.App.2d 11, 38 Cal.Rptr. 376 (1964); *see also Gamer v. duPont Walston, Inc.*, 65 Cal.App.3d 280, 135 Cal.Rptr. 230 (1976).

---

1. Section 187(2) of the Restatement provides in pertinent part as follows:

    The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either,

    a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

    b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

    Restatement 2d, Conflict of Laws, Section 187(2).

S–K's reliance on *Continental Mortgage Investors v. Sailboat Key, Inc.*, 354 So.2d 67 (Fla.App.1977) is misplaced. There the trial judge found that Massachusetts had no real connection with the transaction and that the contractual choice of law was a scheme to evade Florida's usury law. The loan was negotiated in Florida, loan documents were prepared in Florida, the lender's adviser was located in Florida, and the funds were disbursed to the borrower in Florida; the only connection with Massachusetts was that the borrower and the lender's officer flew together to Continental's offices in Boston to execute the documents, thereafter returning to Florida. *Id.* at 72. Thus, *Continental* is clearly distinguishable.

California's public policy against usury is not offended by the adoption of Massachusetts law [2] in this case, and therefore the second exception to the rule that contractual choice of law provisions will be respected is also inapplicable. In this regard it is noteworthy that contractual choice of law provisions resulting in interest rates as high as 20.3% being charged a commercial borrower have been approved in California. *Ury v. Jewelers Acceptance Corp., supra.* Here the loan agreement provided for no specific interest percentage rate, but rather was based on an agreed-upon percentage over the prime rate.[3] The rate of 13.47% to 18% charged S–K, being well within the rate upheld in *Ury*, was not so excessive as to violate California's policy against usury.

We conclude that the selection of Massachusetts law by the parties fully meets the Restatement rule followed by California courts, and therefore, the judgment of the district court is in all respects affirmed.

**2.** Under Massachusetts law, the parties to a loan such as the loan in this case may agree on the interest rate, and therefore, the interest charged would be lawful in Massachusetts. Mass.Ann.Laws: Ch. 107, Section 3.

**3.** In the instant case the prime rate quoted by New York banks at the time the loan was negotiated was approximately 10%. Findings of Fact, ¶ No. 13, Record on Appeal at 1064.