SCANDINAVIAN AIRLINES SYSTEM, Plaintiff-Appellant,

v.

UNITED AIRCRAFT CORPORATION, Defendant-Appellee.

No. 76–1765.

United States Court of Appeals, Ninth Circuit.

July 24, 1979.

George N. Tompkins, Jr., Condon & Forsyth, New York City (argued), Adams Duque & Hazeltine, Los Angeles, Cal., for plaintiff-appellant.

Jacques Soiret, Los Angeles, Cal. (argued), Kirtland & Packard, Los Angeles, Cal., for defendant-appellee.

Keith Gerrard, John D. Dillow, Richard C. Coyle of Perkins, Coie, Stone, Olsen & Williams, amici curiae, for The Boeing Co., Lockheed Aircraft Corp., McDonnell Douglas Corp.

Before ANDERSON and HUG, Circuit Judges, and SOLOMON *, Senior District Judge.

HUG, Circuit Judge:

The central issue of this action is whether strict liability under California law is applicable when a large airline sues a manufacturer of an aircraft engine for a defect in the product that caused property damage to the engine itself and to the aircraft on which it was installed.

Scandinavian Airlines System brought this diversity action to recover for property damage resulting from the failure of two separate jet aircraft engines on two different occasions. The failure of these jet engines on each occasion caused damage to the engines themselves and to the two DC–9 aircraft on which they were installed. Both engines were manufactured by United Aircraft Corporation. One engine, No. 181, was purchased by SAS directly from United. The other engine, No. 168, was installed on a DC–9 which was purchased from McDonnell Douglas Corporation by SAS. This action was brought against both McDonnell Douglas and United. A summary judgment was entered for McDonnell Douglas on the claims against it which was initially appealed by SAS, but subsequently dismissed on motion of SAS.

The complaint stated claims against United on theories of negligence, breach of express and implied warranties and on strict liability. On United's motion for summary judgment on all claims, the trial court granted a partial summary judgment on the claims for relief based upon warranty and strict liability, but denied the motion as to the claim for relief based upon negligence. SAS has appealed this partial summary judgment pursuant to 28 U.S.C. § 1292(b), permission having been granted by this court. SAS does not contest the judgment on the warranty theory, but confines the argument on appeal to the judgment on the strict liability theory.

## FACTS

SAS is a large, international air carrier which owns and operates a fleet of sophisticated jet aircraft. A part of that fleet consists of McDonnell Douglas DC–9 jets. The jet engines used to power SAS's DC–9's are manufactured by United. Extensive negotiations were conducted between SAS and McDonnell Douglas with respect to the purchase of the DC–9's. The specifications that were negotiated included those relating to the thrust output of the United engines.

One engine, the thrust output of which was increased as a result of the negotiations between SAS and McDonnell Douglas, was a United JT8D–11, serial number 676168

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

(No. 168), that was sold to McDonnell Douglas for installation on a DC–9 which was subsequently sold to SAS. The engine was later removed by SAS from the aircraft on which it was originally installed, ultimately being reinstalled on another SAS DC–9. On September 8, 1971, that DC–9 was in the process of takeoff at Rheim/Main Airport near Frankfurt, Germany, when, during its initial takeoff roll, engine No. 168 experienced a failure of a first-stage fan blade, resulting in damage to the engine itself and to the aircraft fuselage. There were no injuries to any persons.

SAS purchased another JT8D–11 engine, serial number 676181 (No. 181), with the same specifications, directly from United, and routinely installed it on another DC–9. On June 30, 1972, at Arlanda Airport near Arlanda, Sweden, that engine also suffered a first-stage fan blade failure during a takeoff run, resulting in damage to the engine itself and to the aircraft fuselage. Again, there were no personal injuries.

The contracts between United and SAS and United and McDonnell Douglas each provided for certain limited warranties and each contained an exculpatory clause as follows:

> The foregoing warranties are exclusive and are given and accepted in lieu of any and all other warranties, express or implied, including without limitation the implied warranty of merchantibility. The remedies of buyer for any breach of warranty shall be limited to those provided herein to the exclusion of any and all other remedies including, without limitation, incidental or consequential damages. No agreement varying or extending the foregoing warranties, remedies or this limitation will be binding upon UAI [Seller] unless in writing, signed by a duly authorized officer of UAI [Seller].

The trial judge found that the exculpatory clause precluded United's liability based on the breach of an express or implied warranty, but did not preclude the claim based upon negligence. The summary judgment in favor of United, which precluded the strict liability claim for relief, was not based, however, upon any of the exculpatory provisions of the contracts. Rather, the trial judge found that the policy reasons for invoking the strict liability doctrine did not apply in this case.

## DISCUSSION

▇ Initially, we note that this case was brought as a diversity action; and, as such, the trial judge was required to look to state law for the appropriate rule of decision. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The applicable substantive law is that of California. Since there is no definitive adjudication by the California Supreme Court on a factually similar case, we seek to reach the resolution of the issue which that court would probably reach under the same facts. *C. R. Fedrick, Inc. v. Borg-Warner Corp.*, 552 F.2d 852, 856 (9th Cir. 1977). When the California Supreme Court has not spoken, California Courts of Appeal decisions are data for determining how the highest California court would rule. *West v. A. T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). The analysis by the district judge of the law of the state in which he sits is entitled to great weight and his determination will be accepted on review, unless shown to be clearly wrong. *C. R. Fedrick, Inc.*, 552 F.2d at 856.

Since we are reviewing a Rule 56 summary judgment, we are mindful that the granting of "[s]ummary judgment . . . is proper only where there is no genuine issue of any material fact or where reviewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law". *Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 63 (9th Cir. 1973); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543 (9th Cir. 1975). There is no question of fact involved in this summary judgment. We are concerned strictly with a question of law.

In holding that SAS could not proceed against United on the theory of strict liability, the trial judge stated:

We also hold that United Aircraft is not liable to SAS on a theory of strict liability in tort, not because of the exculpatory clause, but because of the lack of public policy for such a position. As mentioned above, public policy is designed to protect the small consumer and to allocate the risk of loss to the person most able to bear it, in that case, the manufacturer. Here, where there are two large companies contracting, it is only a question of who between two equals should be made to bear the risk of loss. We see no reason why the manufacturer should be made to bear the risk of loss without fault as between it and a large corporate buyer. It should be noted, again, that there has been no injury here.

In determining whether the California Supreme Court would reach the same result, it is necessary "to examine the foundational reasons underlying the creation of strict products liability in California to ascertain whether the purposes of the doctrine would be defeated or diluted . . ." by affirming the trial judge's decision. *Daly v. General Motors Corp.*, 20 Cal.3d 725, 736, 144 Cal.Rptr. 380, 386, 575 P.2d 1162, 1168 (1978). A reading of California Supreme Court decisions indicates that a number of policies, of varying importance, underlie the doctrine. The first California case to adopt strict tort liability was *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). There the court stated:

> The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.

*Id.* 59 Cal.2d 63–64, 27 Cal.Rptr. at 701, 377 P.2d at 901.

The risk distribution principle was again relied upon in *Seely v. White Motors Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), where the court stated that the rationale behind the doctrine

rests . . . on the proposition that "[the] cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business". *Escola v. Coca Cola Bottling Co.*, 24 Cal.2d 453, 462, 150 P.2d 436 (concurring opinion).

*Id.* 63 Cal.2d at 18–19, 45 Cal.Rptr. at 23, 403 P.2d at 151.

In *Price v. Shell Oil Co.*, 2 Cal.3d 245, 85 Cal.Rptr. 178, 466 P.2d 722 (1970), the court concluded that the risk distribution principle was the fundamental policy behind the doctrine, stating:

> Essentially, the paramount policy to be promoted by the rule is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them.

*Id.* 2 Cal.3d at 251, 85 Cal.Rptr. at 181–182, 466 P.2d at 725–726.

The trial judge's decision does not conflict with the risk distribution rationale in California products liability law. SAS and United are financial equals. Further, both are business entities who sell a product or perform a service which is ultimately paid for by SAS's customers. As a result, "[w]hether the loss is thrust initially upon the manufacturer (United) or consumer (SAS), it is ultimately passed on as a cost of doing business included in the price of the products of one or the other and thus spread over a broad commercial stream". *Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal.App.3d 737, 748, 127 Cal.Rptr. 838, 845 (1976). Unlike the consumers in *Greenman, Seely* and *Price*, SAS can allocate its risk of loss equally as well as United. Therefore, the societal interest in loss shifting present in those cases is absent here.

Although of less significance than the risk spreading rationale, several other policies have been identified as underlying the doctrine of strict products liability in California. The consumer's difficulty in inspecting for defects has impliedly been stat-

ed as a reason for its application. *Halliday v. Greene,* 244 Cal.App.2d 482, 53 Cal.Rptr. 267 (1966). Another policy concerns the difficulty a consumer faces in trying to prove negligence. *Cronin v. JBE Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153, 1162 (1972). In *Daly,* 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162, the court stated:

> We imposed strict liability against the manufacturers and in favor of the user or consumer in order to relieve injured consumers "from *problems of proof* inherent in pursuing negligence . . . and warranty . . . remedies, . . ." (citations omitted)

*Id.* 20 Cal.3d at 736, 144 Cal.Rptr. at 386, 575 P.2d at 1168.

Finally, "[t]he rule of products liability is further rationalized as an inducement to manufacturers to design and produce a safe product . . . , and as a means to avoid the artificial conditions to recovery in warranty created by the rules of privity". *Kaiser Steel Corp.,* 55 Cal.App.3d at 747, 127 Cal.Rptr. at 844.

Here, SAS had the expertise and personnel to inspect the engines for defects. SAS does not have the lack of technical knowledge and expertise which would burden members of the general public in proving negligence in designing or manufacturing the engines. SAS does not face problems of privity as an artificial barrier which the doctrine of strict liability seeks to avoid. Finally, the fact that United will still be liable to airline passengers for any injuries they receive as the result of defective United products will serve as a significant deterrent from manufacturing unsafe products.

The trial judge's decision finds strong support in *Kaiser Steel Corp. v. Westinghouse Elec. Corp.,* 55 Cal.App.3d 737, 127 Cal.Rptr. 838. There the California Court of Appeal stated:

> . . . [T]he doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain the specifications of the product; and (4) negotiate con-

cerning the risk of loss from defects in it. *Southwest Forest Indus. v. Westinghouse Elec. Corp.* (9th Cir. 1970), 422 F.2d 1013, *cert. denied* 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138.

*Id.* at 748, 127 Cal.Rptr. at 845.

Interpreting these four requirements as the court did in *Kaiser* leads us to the conclusion that SAS does not have a claim in strict tort liability against United. SAS, United and McDonnell Douglas dealt in a commercial setting from positions of relatively equal economic strength. The specifications of the engines were negotiated by the parties. Finally, McDonnell Douglas, United and SAS all negotiated the risk of loss for defects in the engines.

We find, therefore, that the trial judge was correct in his interpretation of California law and that the doctrine of strict liability is not available to SAS in this case.

Affirmed.