S. A. EMPRESA DE VIACAO AEREA
RIO GRANDENSE (Varig Airlines),
Plaintiff-Appellant,

v.

The BOEING COMPANY,
Defendant-Appellee.

No. 79–3167.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1980.

Decided April 6, 1981.

Rehearing and Rehearing En Banc
Denied May 22, 1981.

Phillip D. Bostwick, Shaw, Pittman, Potts & Trowbridge, Washington, D. C., for plaintiff-appellant.

Keith Gerrard, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendant-appellee.

Before FERGUSON and NORRIS, Circuit Judges, and PANNER,* District Judge.

FERGUSON, Circuit Judge:

This appeal arises out of the crash of a Boeing 707 airliner. The district court granted summary judgment in favor of Boeing, the defendant manufacturer. We hold that the court correctly resolved the choice of law issue and properly applied the governing law.

## I. FACTS

On June 2, 1967, Boeing, a Delaware corporation with its principal place of business in the state of Washington, sold the subject aircraft to Seaboard World Airlines. A provision of the sales contract dictated that all disputes arising out of the contract were to be governed by Washington law. Article 6 contained the following disclaimer:

> THE WARRANTIES PROVIDED IN THIS ARTICLE 6, THE OBLIGATIONS AND LIABILITIES OF BOEING HEREUNDER, AND THE RIGHTS AND REMEDIES OF BUYER HEREUNDER (i) ARE EXCLUSIVE AND IN

---

* The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

SUBSTITUTION FOR, AND BUYER HEREBY WAIVES, ALL OTHER WARRANTIES, GUARANTEES, OBLIGATIONS, LIABILITIES, RIGHTS AND REMEDIES, EXPRESS OR IMPLIES [sic], ARISING BY LAW OF OTHERWISE, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MERCHANTABILITY, ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, ANY IMPLIED WARRANTY OF FITNESS, *AND ANY OBLIGATION OR LIABILITY OF BOEING ARISING FROM TORT*, OR FOR LOSS OF USE, REVENUE OR PROFIT, OR FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES
. . . .

(emphasis added).

The agreement further provided that:

In the event of the resale or lease of any Aircraft, all rights and benefits conferred under this Agreement upon Buyer with respect to such Aircraft shall inure to the benefit of such purchaser or lessee, as the case may be, *but only if Buyer obtains from such purchaser or lessee an express agreement, in writing, to be bound by and comply with all applicable terms and conditions set forth in Article [] 6 . . . .*

(emphasis added).

On August 2, 1968, following nine months of negotiations, Seaboard concluded a leaseback sale agreement with plaintiff Varig Airlines, a Brazilian corporation. This agreement contained the following provision:

Seaboard hereby sells, transfers and assigns to Varig, effective from and after delivery by Seaboard to Varig of the Aircraft, all of the rights and benefits conferred upon Seaboard under the Boeing Agreement with respect to the Aircraft. In consideration of the transfer of such rights and benefits, *Varig hereby agrees to be bound by and comply with all applicable terms and conditions set forth in*

*Article [] 6 . . . of the Boeing Agreement.*

(emphasis added).

Seaboard's chief negotiator stated that this assignment of warranty provision was originally drafted by Varig's attorney. The contract was executed in New York.

The aircraft was delivered to Varig in early 1969. On July 11, 1973, while the plane was en route from Brazil to Paris, a fire broke out in a restroom. The dense smoke that filled the plane forced a crash landing outside Paris. One hundred twenty-four persons died in the crash. The aircraft was destroyed. The Civil Aviation Department of France concluded that the probable cause of the accident was the restroom fire. Its report noted that the Boeing 707's trash receptacles did not conform to the Federal Aviation Administration's (FAA) Civil Air Regulation 4b.381(d)[1] in that the receptacles were not capable of preventing the development of a possible fire.

On July 8, 1975, Varig filed suit in the Central District of California to recover for loss of the aircraft. After six months of discovery, Boeing moved for a change of venue pursuant to 28 U.S.C. § 1404(a). Judge William P. Gray granted the motion and the case was transferred to the Western District of Washington, Walter T. McGovern, Chief Judge.

On May 5, 1976, Judge McGovern appointed a special master to rule on discovery matters. Boeing then moved for summary judgment on the basis of the exculpatory clause incorporated from the Boeing-Seaboard contract into the Seaboard-Varig agreement. In response to this motion, Varig sought discovery concerning the nature and extent of the exculpatory provision. Because Boeing objected to the requested discovery, Varig brought the matter before the special master. Varig also sought, under Fed.R.Civ.P. 56(f), to have the hearing on the summary judgment motion continued for one month so that the requested discovery could be obtained. The

1. The regulation is codified in its current form at 14 C.F.R. § 853(d) (1980).

special master denied Varig's discovery request because it was directed to information inadmissible under Washington's parol evidence rule. However, a continuance was granted to permit Varig's negotiator on the purchase to submit an affidavit raising an issue of fact. Judge McGovern affirmed the ruling.

On January 14, 1977, Judge McGovern granted Boeing's motion for summary judgment. No final judgment was entered. Judge McGovern granted Varig's motion to have the case retransferred to the Central District of California on January 18, 1978. Judge Gray thereupon issued an order to show cause why the summary judgment should not be set aside. After the issues were briefed and argued, Judge Gray entered an order reaffirming the summary judgment. Final judgment was entered on February 9, 1979, pursuant to Fed.R.Civ.P. 54(b). This appeal followed.

## II. GOVERNING LAW

Plaintiff raises five issues on appeal. With respect to four, it is urged that the district court erred in applying Washington instead of California law. Because they are of central importance, we first examine the applicable choice-of-law rules.

■ When a change of venue occurs pursuant to 28 U.S.C. § 1404(a), "[t]he transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964). In diversity cases, federal courts must apply the conflict-of-law principles of the forum state. *Sarlot-Kantarjian v. First Pennsylvania Mortgage Trust,* 599 F.2d 915, 917 (9th Cir. 1979). Thus, Judge McGovern was required to confront all conflict-of-law questions as if he were sitting in California.

■ California does not apply a mechanical test to choice-of-law questions. Rather, it employs the "governmental interest analysis." Under this approach, California law will be applied unless the foreign law conflicts with California law and California

and the foreign jurisdiction have significant interests in having their law applied. *Strassberg v. New England Mutual Life Ins. Co.,* 575 F.2d 1262, 1263–64 (9th Cir. 1978); *Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 163, 148 Cal.Rptr. 867, 870–71, 583 P.2d 721 (1978). Where significant interests conflict, the court must assess the "comparative impairment" of each state's policies. *Strassberg, supra,* at 1264; *Offshore Rental Co., supra,* 22 Cal.3d at 164–65, 148 Cal.Rptr. at 872–73, 583 P.2d at 726–27. The law applied will be that of the state whose policies would suffer the most were a different state's law applied. *Strassberg, supra,* at 1264; *Offshore Rental Co., supra,* 22 Cal.3d at 164–65, 148 Cal. Rptr. at 872–73, 583 P.2d at 726–27. A separate choice-of-law inquiry must be made with respect to each issue in a case. *Beech Aircraft Corp. v. Superior Court of Los Angeles,* 61 Cal.App.3d 501, 518, 132 Cal.Rptr. 541, 550 (1976).

■ The preceding rules apply regardless of whether the dispute arises out of contract or tort. *Strassberg, supra,* at 1264. An exception applies, however, in the case of contracts with choice-of-law provisions. California will apply the substantive law designated by the contract unless the transaction falls into either of two exceptions:

1) the chosen state has no substantial relationship to the parties or the transaction, or

(2) application of the law of the chosen state would be contrary to a fundamental policy of the state.

*Sarlot-Kantarjian v. First Pennsylvania Mortgage Trust, supra,* 599 F.2d 915 (9th Cir. 1979) (citation omitted). *See Gamer v. duPont Walston, Inc.,* 65 Cal.App.3d 280, 286, 135 Cal.Rptr. 230, 235 (1976); *Windsor Mills, Inc. v. Collins & Aikman Corp.,* 25 Cal.App.3d 987, 995 n.6, 101 Cal.Rptr. 347, 352 n.6 (1972). Under the second exception, where application of a choice-of-law provision would result in the contravention of California's public policy, the provision will be ignored to the extent necessary to preserve public policy. *See Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 20

Cal.App.3d 668, 673, 97 Cal.Rptr. 811, 814 (1971); *Foreman v. George Foreman Associates, Ltd.*, 517 F.2d 354, 357 (9th Cir. 1975) (dictum).

## III. SCOPE OF THE EXCULPATORY CLAUSE AND PROPRIETY OF SUMMARY JUDGMENT

### A. *Post-Delivery Negligence*

Varig contends that Judge McGovern failed to follow proper rules of contract construction in holding that the exculpatory clause exempted Boeing from liability for post-delivery negligence. Varig further urges that even if the court were correct in its reading of the exculpatory clause, under California law the question of the parties' intent with respect to that clause was a question of fact for the jury. Such an issue, it is argued, precludes summary judgment.

### 1. *Interpretation of the Contract*

■ Varig included in its complaint a cause of action based upon Boeing's alleged negligent failure to warn of the fire hazard following delivery of the aircraft. Varig contends that post-delivery negligence is not excused by the exculpatory clause. In making this claim, plaintiff is forced to confront the broad language of the clause: "[B]uyer hereby waives . . . any obligation or liability of Boeing arising from tort . . . ." Under California law, upon which Varig relies, "[i]f the language used be broad enough, an actor may disclaim liability for negligence of any type."[2] *Delta Airlines, Inc. v. Douglas Aircraft Co.*, 238 Cal.App.2d 95, 101, 47 Cal.Rptr. 518, 522 (1965). *Accord, Tokio Marine v. McDonnell Douglas Corp.*, 617 F.2d 936, 940 (2d Cir. 1980) (applying California law, language broad enough to include claim for post-delivery negligence).

Varig argues that two of the provisions of the Boeing-Seaboard contract, each excusing Boeing from liability incurred after delivery, would be redundant if the excul-

patory clause were intended to cover post-delivery negligence. It argues that the exculpatory clause by implication applies only to negligent acts committed prior to delivery of the aircraft. We disagree.

Nothing on the face of the contract contravenes Judge McGovern's conclusion that the phrase "buyer . . . waives . . . any obligation . . . arising from tort . . ." means what it says. The two provisions relied upon by Varig have no bearing on the scope of the clause. The first relates to patent infringement, a subject unrelated to post-delivery negligence. The second requires a subsequent purchaser to indemnify Boeing for any claims arising from flight training by Boeing employees. This provision is not superfluous because it requires the subsequent purchaser to indemnify Boeing against suits by third parties. The exculpatory clause merely protects Boeing from suit by the subsequent purchaser.

Varig further advances the presence of a third contract provision as indicating a limit on the exculpatory clause. This provision requires Boeing to issue regular service bulletins covering design changes in its 707 aircraft. We see no logic in the argument that this requirement indicates an intent to limit the scope of the exculpatory clause.

### 2. *Intent of the Parties*

■ In granting summary judgment without considering evidence of the parties' intent beyond the four corners of the contract, Judge McGovern apparently relied on the special master's conclusion that such evidence was barred under Washington's parol evidence rule. The law in Washington is that the intent of the parties is irrelevant when the terms of a contract are unambiguous. *Grant County Constructors v. E. V. Lane Corp.*, 77 Wash.2d 110, 459 P.2d 947, 954 (1969). *See Barclay v. City of Spokane*, 83 Wash.2d 698, 521 P.2d 937, 938–39 (1974). We have held the exculpatory clause unambiguous. Thus, if the dis-

---

**2.** Washington courts have reached a similar conclusion. *See, e. g., Hewitt v. Miller*, 11 Wash.App. 72, 521 P.2d 244 (1974).

trict court properly held Washington law controlling, there is no merit to plaintiff's argument that summary judgment was improper because the intent of the parties presented a question of fact for the jury. Varig contends, however, that California law is controlling and that under the decisions of that state, the intent of the parties created a question of fact.[3]

■ We agree with the district court that Washington law should determine the relevance of Boeing's and Seaboard's intent. Varig argues that information revealing Boeing's and Seaboard's understanding of the exculpatory clause is crucial to its case. This is so because, in agreeing to adopt the exculpatory provision, Varig maintains that it released Boeing from potential liability only to the extent contemplated by Boeing and Seaboard. In light of this reasoning, it is difficult to perceive plaintiff's rationale for looking to California's parol evidence rule.

Boeing and Seaboard agreed that their contract would be governed by Washington law. Especially where a party to a contract is represented by counsel, we may attribute to it knowledge of the law. Boeing and Seaboard intended, therefore, that if they were successful in drafting an unambiguous document, the face of that document would be the sole source of information regarding their agreement. Varig does not contend that it renegotiated the exculpatory provision. Rather, it argues that the scope of the provision it adopted is identical to that provision's original scope. We can only understand the original scope of the exculpatory provision by respecting the original parties' intent that it be governed by Washington law.

We have previously noted the lack of ambiguity in the exculpatory clause. By its plain terms, it was broad enough to encompass claims arising out of post-delivery negligence. We thus find no error in the district court's refusal to permit factual inquiry into Boeing's and Seaboard's intent.

### B. Violation of California's Public Policy

■ Varig's second argument urges an addition to the California choice-of-law rules outlined in section II, *supra*. Varig contends that if a contract provision is contrary to the public policy of California, a California court will refuse to enforce it, regardless of whether the generally appropriate governing law is California's or another state's. In light of this assertion, Varig contends that: (1) summary judgment is always inappropriate where there is a question concerning violation of California public policy, (2) summary judgment was improperly granted because Boeing attempted to exempt itself from liability for violations of law, contrary to the public policy of California, and (3) summary judgment was improperly granted because Boeing attempted to exempt itself from liability for fraud, contrary to the public policy of California.

Because we conclude that the public policy of California does not control the outcome of this appeal, we do not reach the first contention.

### 1. Public Policy and Choice of Law

In opposition to the summary judgment, plaintiff relies upon the California rule that a choice-of-law provision will be ignored to the extent necessary to preserve California's public policy. *See* part II, *supra*. From California's willingness to ignore choice-of-law agreements, plaintiff attempts to derive the broader rule that the state will disregard the foreign law designated under its governmental interest analysis when application of that law would violate California's public policy.

---

**3.** California follows a liberal parol evidence rule which would preclude summary judgment at this stage in the litigation. *See, e. g., Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 564–65 & n.5, 442 P.2d 641 (1968); *Smithers &* *Co. v. Federal Ins. Co.*, 631 F.2d 1364, 1366 (9th Cir. 1980). Evidence of the parties' intent is permitted even where the contract standing alone is unambiguous. *Pacific Gas* at 564, *Smithers* at 1366.

Plaintiff has not cited a single case which supports this broader rule. We are obligated to follow California's choice-of-law rules. *Sarlot-Kantarjian v. First Pennsylvania Mortgage Trust, supra,* 599 F.2d at 917. When we confront a situation not yet met by the California Supreme Court, we must fashion the rule we believe that court would follow were it confronted with a similar situation. *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir. 1980).

Application of plaintiff's suggested rule to the present case would have the effect of imposing California's public policy on litigants and events having no substantial contact with the state. Adoption of the principle would mean that no party to a contract in any of the 50 states could be certain that his bargain would be enforceable. If minimum contact with California existed, a party could be made to answer a complaint filed in California. Under the rule argued for, every allocation of risk between the contracting parties would have to withstand scrutiny under the public policy dictates of California. In reviewing the claim that summary judgment was improper because the contract exculpated Boeing from liability due to violations of law and fraud, we adhere to the California choice-of-law rules outlined in part II of this opinion.

### 2. *Violation of Law*

Plaintiff alleges that a proximate cause of the accident aircraft's crash was Boeing's failure to comply with a Federal Aviation Administration regulation.[4] Citing California law, plaintiff maintains that Boeing cannot exculpate itself from liability incurred due to a violation of federal regulations. It cites three Court of Appeal cases which support the proposition that pursuant to California Civil Code § 1668 (West 1973),[5] California courts will refuse to enforce an exculpatory provision that would insulate a

party from the consequences of his violation of law. Of these cases, only *Hanna v. Lederman,* 223 Cal.App.2d 786, 36 Cal.Rptr. 150 (1963), deals with an exculpatory clause in a contract between two commercial entities.

In *Hanna,* a commercial tenant entered into a lease excusing the landlord from all damage to goods and merchandise from any cause. Citing Civil Code § 1668, the court held that the tenant's negligence action could not be barred if damage occurred as a proximate result of the landlord's violation of a municipal ordinance requiring sounding devices on sprinkler systems. *Hanna* might support the argument that, under California law, if plaintiff could prove that Boeing's alleged violation of law was a proximate cause of the crash, the exculpatory clause would be ignored. *But see Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239, 244 (5th Cir. 1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975). Like the instant case, *Hanna* involved commercial entities, a contract which explicitly stated that the waiver was part of the consideration for the contract, and property damage, not personal injury. *Id.* at 788–789, 36 Cal.Rptr. 150.

■ Judge McGovern, sitting in Washington, found that under that state's law the general rule permitting exculpation for negligence, *Hewitt v. Miller,* 11 Wash.App. 72, 521 P.2d 244 (1974), would not be abrogated in the event that a negligent act also constituted a violation of law. Interpretations of local law by a district court sitting in the locality are entitled to great weight. They will not be disturbed unless clearly wrong. *Leslie Salt Co. v. St. Paul Mercury Ins. Co.,* 637 F.2d 657, 659 (9th Cir. 1980). Though the Washington courts have not directly addressed this subject, closely related decisions support the conclusion reached by Judge McGovern. *See, e. g., Ritter v. Shotwell,* 63 Wash.2d 601, 388 P.2d 527, 530

---

4. The regulation allegedly violated required that all waste receptacles be fire resistant. *See* 14 C.F.R. § 853(d) (1980).

5. California Civil Code § 1668 provides:

All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful *injury to the person or property of another,* or violation of law, whether willful or negligent, are against the policy of the law.

(1964); *Stegall v. Kynaston*, 26 Wash.App. 731, 613 P.2d 1214, 1216 (1980).

Because, arguably, the laws of the two relevant jurisdictions differ, we must determine whether one state has a significant interest in having its law applied. *See* part II, *supra.* The policy underlying the California rule appears to be the protection of its citizens. Here, that policy is not impaired if Washington law controls. The "victim" in this instance, Varig Airlines, is not a citizen of California. Nor did it originally attempt to invoke the protection of California law. Further, despite Boeing's immunity from suit by Varig, nothing inhibits the operation of the regulation in question through suits brought by the estates of the deceased or sanctions imposed by the Federal Aviation Administration. *See Delta Air Lines v. McDonnell Douglas Corp.*, 503 F.2d 239, 243–44 (5th Cir. 1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); *Delta Air Lines v. Douglas Aircraft Co.*, 238 Cal.App.2d 95, 47 Cal.Rptr. 518, 524 (1965).

Washington, by contrast, does have an interest in having its law observed. Boeing is a Washington-based corporation. In accordance with the policy of that state, it consciously allocated the risk associated with its contract with Seaboard and, through Seaboard, with Varig. The state of Washington has an interest in seeing that the legitimate expectations of the parties to the contract are not frustrated.

Because we find Washington law controlling, we find no error in the granting of summary judgment.

### 3. *Fraud*

■ In the district court, Varig argued that the aircraft's alleged failure to conform to FAA regulations, when Boeing represented in its contract with Seaboard that the aircraft would conform, and Boeing's failure to warn Varig of the fire hazard once Boeing allegedly had knowledge of it, amounted to fraud. It maintained that California law controlled and that, under Civil Code § 1668, a California court will not enforce any contract provision that attempts to exculpate an actor from liability for fraud.

We find no merit in the argument that a subsequent failure to warn amounts to fraud under § 1668. Neither the case law nor the face of the statute supports this construction.

Plaintiff also argues that negligent misrepresentation falls within the strictures of California Civil Code § 1668. *See Palmquist v. Mercer*, 43 Cal.2d 92, 272 P.2d 26 (1974). Assuming, *arguendo*, that plaintiff is correct, the outcome of the case is unaffected because Washington, not California, law would apply in that case.

Judge McGovern found Washington law controlling and concluded that Washington treats negligent misrepresentation as mere negligence, not as fraud vitiating an exculpatory provision. *See Brown v. Underwriters at Lloyd's*, 53 Wash.2d 142, 332 P.2d 228, 233 (1958). Plaintiff has suggested no reason to question this conclusion. The competing interests of Washington and California with respect to this issue parallel those discussed in section 2, *supra.* For the reasons expressed there, we conclude that Judge McGovern was justified in applying Washington law. We therefore further conclude that plaintiff's claim under California Civil Code § 1668 raised no unresolved issue of fact. Thus, the granting of summary judgment was proper. *See Lurie v. State of California*, 633 F.2d 786, 788 (9th Cir. 1980).

### C. *Strict Liability*

■ In the district court, Varig sought to recover on the ground that Boeing was strictly liable under California law for accidents proximately caused by defects in the aircraft. Before this court, Varig argues that summary judgment was improper because, under California law, strict liability in tort cannot be waived.

Although the California Supreme Court has not addressed this issue, the California Court of Appeal and three circuits of the United States Court of Appeals applying California law have held that the doctrine

of strict liability does not apply between large corporate enterprises which have allocated risks by contract. *Kaiser Steel Corp. v. Westinghouse Electric Corp.,* 55 Cal. App.3d 737, 746–48, 127 Cal.Rptr. 838, 844–45 (1976); *Delta Air Lines, Inc. v. Douglas Aircraft Co.,* 238 Cal.App.2d 95, 47 Cal.Rptr. 518, 523–24 (1965); *Tokio Marine & Fire Ins. v. McDonnell Douglas Corp.,* 617 F.2d 936, 939–40 (2d Cir. 1980); *Scandinavian Airlines System v. United Aircraft Corp.,* 601 F.2d 425 (9th Cir. 1979); *Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239 (5th Cir. 1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975).

Washington has not treated this question, but court decisions dealing with the validity of warranty disclaimers indicate that a like conclusion would be reached. *See Berg v. Stromme,* 79 Wash.2d 184, 484 P.2d 380 (1971); *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wash.App. 39, 554 P.2d 349, 353 (1976). Because we perceive no conflict in the law of the two relevant jurisdictions, we examine this issue in light of the jurisprudence of the original forum state, in keeping with California's choice-of-law rules. *See* part II, *supra.*

*Kaiser, supra,* listed four factors to be considered in determining whether the concept of strict liability should be applied. In *Scandinavian Airlines, supra,* we looked to those factors in refusing to hold a corporate defendant liable:

> [T]he doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain the specifications of the products; and (4) negotiate concerning the risk of loss from defects in it.

601 F.2d at 429, *quoting* 55 Cal.App.3d at 738.

Varig argues that Judge McGovern did not have sufficient information on which to base a judgment that strict liability did not apply. With respect to factors one, two and four, this argument is without merit. The affidavits and documents before the court on the summary judgment motion revealed the size of the two corporations and the extent of their negotiations over the contract. They further evidenced that Varig had the option of purchasing the plane without agreeing to exculpate Boeing from liability. However, there was no evidence in the record that Varig "bargain[ed] the specifications of the product." It is highly unlikely that there existed an opportunity to do so, as the plane was purchased secondhand.

A reading of the California and federal cases noted above indicates that bargaining the specifications of the product is not crucial to the conclusion that strict liability does not apply. As we made clear in *Scandinavian Airlines,* the primary policy implemented by strict liability is the equal distribution of risks between an individual buyer confronted with a non-negotiable contract and a commercial seller. 601 F.2d at 428. We concluded there that Scandinavian Airlines, unlike the individual consumers in the California Supreme Court's product liability cases, could allocate its risks of loss as well as could defendant United Aircraft. This conclusion applies with equal force to Boeing and Varig Airlines. *See id.* Therefore, on the record before it, without finding that Varig had bargained the specifications of the aircraft, the district court had sufficient information to grant summary judgment on the issue of strict liability.

## IV. DENIAL OF DISCOVERY

■ In the proceedings below, the special master denied Varig's discovery request. In light of Boeing's motion for summary judgment, Varig moved under Fed.R. Civ.P. 56(f) for a continuance and for reversal of the special master's ruling. The continuance, but not the discovery, was granted. Varig now urges that we reverse the summary judgment motion so that it may conduct its discovery.

Varig sought discovery as to two issues: (1) the intent of the parties with respect to the scope of the exculpatory clause, and (2) whether the exculpatory clause violated California's public policy. Since we have concluded that the district court correctly

excluded parol evidence as to the intent of the parties, and that the public policy of California did not control the case, there is no basis for holding that Judge McGovern abused his discretion by refusing to permit discovery on these two issues. *See British Airways Board v. Boeing Co.*, 585 F.2d 946, 954 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 90 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

### V. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.