354 So.2d 67 (1977)
CONTINENTAL MORTGAGE INVESTORS, a Massachusetts Business Trust, Appellant,
v.
SAILBOAT KEY, INC., a Florida Corporation, Appellee.
No. 75-1686.
District Court of Appeal of Florida, Third District.
September 13, 1977.
Rehearing Denied February 10, 1978.
*69 Sibley, Giblin, Levenson & Glaser, Miami, Richard H.M. Swann, Coral Gables, for appellant.
Lapidus & Hollander, Miami, for appellee.
Before HENDRY, C.J., and PEARSON and HAVERFIELD, JJ.
PER CURIAM.
The mortgagee, Continental Mortgage Investors, appeals an adverse judgment of $1,321,924.06 plus costs in favor of the mortgagor, Sailboat Key, Inc., in this foreclosure action based upon a determination that a loan agreement was usurious.
Burton Goldberg, president of Sailboat Key, Inc., entered into negotiations on behalf of Sailboat Key with Continental Advisors *70 for financing the acquisition and development of an island in Biscayne Bay known as Fair Isle. Continental Advisors, which is based in Coral Gables, is the advisor of appellant, Continental Mortgage Investors (hereinafter referred to as CMI), a Massachusetts business trust with offices in Boston. On December 30, 1969 CMI sent a loan commitment letter to Sailboat Key setting out the following terms: (1) a 24-month loan in the principal amount of $3,350,000 bearing interest at 14% per annum; (2) a 2% discount on the face amount of the loan to be taken by CMI (i.e., $67,000); (3) as additional consideration, receipt by CMI of 50% of the stock of the borrower, Sailboat Key, Inc.; (4) the right of first refusal on construction loans; (5) designation of the laws of Massachusetts as governing; (6) a 1% commitment fee to be paid by borrower upon acceptance of the commitment; however, upon closing the loan within 30 days of the date thereof, the 1% fee would be credited against the discount of the loan. Burton Goldberg paid CMI the commitment fee of $33,500 on behalf of Sailboat Key. All the necessary documents were prepared by CMI's advisor in Florida, and on January 22, 1970, in the Boston offices of CMI, the parties executed these documents which included a loan agreement, a note secured by a first mortgage, personal guarantees of Burton Goldberg and his wife and stock pledge agreements. The 1% commitment fee was credited against the discount of the loan, and CMI began disbursing the funds to Sailboat Key. In August 1971 the loan was in default for Sailboat Key's failure to make the interest payments on the due dates and the parties reached the following settlement agreement: (1) CMI to advance an additional $400,000 for which Sailboat Key would execute a note; (2) CMI to sell all of its Sailboat Key stock to Burton Goldberg for $10,000; and (3) CMI to release its right of first refusal on all construction financing for the sum of $740,000 ($190,000 payable on or before November 30, 1971 and the remainder due on November 1, 1976). In accordance with the above terms, on October 22, 1971 the parties executed a modification of loan agreement. Sailboat Key then executed a $400,000 note and $740,000 note (which bore no interest) secured by mortgages in favor of CMI which further agreed to subordinate $550,000 of the $740,000 indebtedness in favor of an institutional lender providing $6,000,000 in financing. Thereafter, Sailboat Key borrowed $6,000,000 from Fidelity Mortgage Investors to refinance its land development loan, and on November 5, 1971 paid CMI all the funds advanced by it totaling $2,691.412.17 and the $190,000 due under the terms of the $740,000 note.
Subsequently, Fidelity Mortgage Investors and others filed a mortgage foreclosure action naming as defendants, among others, CMI and Sailboat Key. CMI as holder of a subordinated mortgage in the amount of $740,000 filed a cross-claim against Sailboat Key which answered and raised the defense of usury. Sailboat Key also cross-claimed against CMI for return of the principal amount paid and double the amount of interest exacted on the ground that CMI had received interest at a rate in excess of 25%. CMI answered the cross-claim and pled as defenses: (1) that Massachusetts law is applicable and under the laws of Massachusetts, the loan is not usurious; (2) that the 50% stock of Sailboat Key it received cannot be considered interest because the value thereof depended upon the success of the venture within the meaning of Section 687.03, Florida Statutes (1975); (3) that the modification of the loan agreement of October 22, 1971 released CMI from any claims or defenses with respect to the loan; (4) that Sailboat Key is barred by the statute of limitations; and (5) that Sailboat Key cannot raise the defense of usury pursuant to Section 687.11(4), Florida Statutes (1974). Upon motion therefor, the cross-claims of CMI and Sailboat Key were severed from the main action. Sydney Lefcourt, certified public accountant, was appointed special master to make findings of fact with regard to the interest computations. CMI then voluntarily dismissed its cross-claim to foreclose the mortgage securing the $740,000 note. The special master in his report *71 determined that the interest on the actual principal amount loaned exceeded 15% without considering the issue of whether the receipt of the 50% equity interest in Sailboat Key by CMI represented additional interest. CMI filed exceptions to the report and a hearing was held thereon and on Sailboat Key's cross-claim. After hearing the testimony presented, the trial judge concluded that (1) Florida law and not Massachusetts law was applicable because the only purpose in selecting Massachusetts law was to evade Florida's usury laws; (2) a 2% or $67,000 discount was taken and CMI's bookeeping records so indicated; (3) Sailboat Key is not barred by the statute of limitations as the statute had not yet begun to run; (4) the stock in Sailboat Key which CMI received as additional consideration was valued at $987,500 when CMI took it and is considered as interest; (5) CMI did not provide funds for actual construction of the project and had the right, not the obligation, to make such a loan which it declined to make; (6) in fact, CMI forced Sailboat Key to repurchase the stock from CMI (the 50% equity interest in the project) for $750,000; and (7) the $10,000 received for the stock, and the $190,000 payment on the $740,000 note[1] were additional interest on the loan. The trial judge concluded that the 2% discount, the $10,000 cash payment and the $740,000 note are additional interest which resulted in an interest rate in excess of 25%. He then determined that the proper penalty is twice the amount of interest actually exacted and entered judgment for $1,321,924.06[2] plus costs in favor of Sailboat Key and further held that CMI could not recover the $550,000 balance on the $740,000 note.
A threshold question raised in this appeal is whether the laws of Massachusetts[3] as appellant contends, or the laws of Florida as appellee argues is applicable to the instant transaction.
An exception to the general rule that a contract valid under its governing law is valid everywhere is the rule that where the enforcement of the agreement would violate the fixed, settled or strong public policy of the state in which the action is brought, it will not be enforced by that state. See 15A C.J.S. Conflict of Laws § 4(10) (1967); 17 C.J.S. Contracts § 16 (1963); and Davis v. Ebsco Industries, Inc., 150 So.2d 460 (Fla. 3d DCA 1963); Bond v. Koscot Interplanetary, Inc., 246 So.2d 631 (Fla. 4th DCA 1971). The public policy of a state is the law of the state whether found in its constitution, statutes, judicial records or otherwise. See 17 C.J.S. Contracts § 16e (1963) and Davis, supra; C & D Farms, Inc. v. Cerniglia, 189 So.2d 384, 386 (Fla. 3d DCA 1966); Bond, supra. The public policy in this state with respect to usurious contracts and corporations is found in Florida Statute 687.02 (1975) which dates back to 1955 and provides that "any contract whereby a corporation undertakes to pay an interest rate higher than fifteen per annum is hereby declared usurious." The prime purpose of the usury law is to protect needy borrowers by penalizing unconscionable moneylenders. Stubblefield v. Dunlap, 148 Fla. 401, 4 So.2d 519 (1941). The contract in this case is far in excess of the maximum 15% rate (which will be discussed in detail infra), and to apply Massachusetts law and enforce this agreement would violate Florida's well settled and strong public policy.
There is a second compelling reason to hold Massachusetts law inapplicable. Where parties have expressly designated the governing law, the only question for the *72 court to determine is whether they acted in good faith or in bad faith for the purpose of evading the law of the place to which their contract is really referable. See 45 Am.Jur.2d Interest And Usury § 21 (1969). Thus, if a contract of loan secured by a lien on real estate is made with the intent and purpose to evade the usury laws of the jurisdiction where the real estate is situated, its laws will govern. 91 C.J.S. Usury § 4(8) (1955); 45 Am.Jr.2d Interest and Usury § 31 (1969) and Thomson v. Kyle, 39 Fla. 582, 23 So. 12 (1897); Beacham v. Carr, 122 Fla. 736, 742, 166 So. 456, 459 (1936). With respect to the issue of whether the parties acted in good or bad faith in their designation of the governing law, effect will be given to their intention only insofar as that intention is directed to the law of the place that has a real and vital connection with the transaction. 45 Am.Jur.2d Interest and Usury § 21 (1969); May v. United States Leasing Corporation, 239 So.2d 73 (Fla. 4th DCA 1970). Which state has a real and vital connection with the transaction is a question of fact to be determined by the trier of the facts. See May, supra. The judge determined that Massachusetts had no real connection with this transaction and the choice of Massachusetts law was a scheme to evade Florida's usury law and to exact greater interest than Florida law allows. This determination was based upon the following findings of fact:
"The testimony, unopposed, reflects that the loan was to a Florida borrower upon security of Florida real estate. The loan was negotiated in Florida. The loan documents were prepared in Florida by the Advisor to the Trust which approved all loans. The Advisor was located in Florida and was headed by a Florida lawyer. The money was disbursed to the borrower in Florida. The only connection with Massachusetts was that the borrower, its attorney and CONTINENTAL's officer who handled the transaction took all of the loan documents which had been prepared in Florida, got on a plane at Miami International Airport and flew to Logan Airport in Boston, Massachusetts. There they got off the plane, went to the offices of CONTINENTAL MORTGAGE INVESTORS, signed the documents, took the documents with them, got back on the plane and flew back to Miami. The documents provided that Massachusetts law should apply."
The record substantiates these findings and, therefore, the trial judge was correct in holding Florida law applicable. Cf. Continental Mortgage Investors v. Village By The Sea, Inc., 252 So.2d 833, 835 (Fla. 4th DCA 1971).
CMI contends that the charge by the lender and the payment by the borrower of a 1% commitment fee is not an interest payment and cannot be included as interest in the computation to determine the rate of interest charged by the lender.
CMI argues that the trial judge erred in finding that a 2% as opposed to a 1% discount was charged and collected because the 1% commitment fee was credited against the discount as provided in the commitment letter of December 30, 1969 which reads in pertinent part:
* * * * * *
"14. Commitment Fee:

"A commitment fee of 1% of the loan amount shall be paid by the Borrower upon accepting this commitment, along with an executed copy of this letter. "If within 30 days from the date of this letter the loan is closed in accordance with the terms and conditions as set forth herein, the above fee shall be credited against the discount of the loan. If, through no fault of the Lender, the loan is not closed in accordance with this letter, the fee shall be deemed fully earned by Continental Mortgage Investors."
* * * * * *
While we agree with appellant that a commitment fee is not a charge for the use of money and cannot be categorized as interest,[4] the events of the instant case demonstrate that, in fact, no commitment fee *73 ultimately was charged. Although what was initially termed a commitment fee was paid by the borrower, the loan was closed within 30 days. Accordingly, CMI credited the fee to the 2% loan discount and, in effect, waived the commitment fee. The bookkeeping records of CMI also reflect a discount of 2%.
Appellant next urges as error, including in the computation of the interest its receipt of an equity position in the project of the borrower.
Pursuant to the terms of the loan agreement, CMI received 50% of the outstanding capital stock of Sailboat Key, Inc. Based upon the uncontested testimony, the judge found that at the time the stock was issued to CMI the parties agreed that the total value of all the Sailboat Key stock was $1,975,000 and, therefore, the value of CMI's 50% equity was $987,500. CMI basically contends that the value of the equity in the project which it received (a so called "equity kicker") substantially depended upon the success of the venture and should have been excluded from the calculation of interest as provided in Section 687.03(4), Florida Statutes (1974):
"(4) If a loan exceeds $500,000 then, for the purposes of this chapter, interest on that loan shall not include the value of property charged, reserved, or taken as an advance or forbearance, the value of which substantially depends on the success of the venture in which are used the proceeds of that loan. Stock options and interest in profits, receipts, or residual values are examples of the type of property the value of which would be excluded from calculation of interest under the preceding sentence."
We remain unconvinced that the trial judge erred. First, the statute gives as examples of "equity kickers" stock options and interest in profits, etc., not shares of stock. Second, the value of the property must substantially depend upon the success of the venture. Here, the uncontroverted evidence showed the stock received by CMI was worth $987,500 at that time and this value did not depend upon the success of the venture.
CMI for the next two points on appeal contends that (1) the penalty for charging usury of double the amount of interest paid is not applicable to a corporate borrower, and (2) a corporate borrower of a sum in excess of $500,000 may not plead usury defensively or affirmatively. As authority for the above contentions CMI cites to Tel Service Co. v. General Capital Corporation, 227 So.2d 667 (Fla. 1969) and Section 687.11, Florida Statutes (1975):
"687.11 Interest rates; individuals secondarily liable on corporate obligations.
"(1) No individual secondarily liable as endorser, guarantor, surety, or otherwise on any corporate obligation shall be required, in any proceeding for collection of interest in the courts of this state, to pay any interest in excess of 10 (10%) percent per annum, and any interest claimed therein against such individual in excess of 10 (10%) percent per annum shall be forfeited; and no corporation, in any such proceeding in the courts of this state where the interest is proven to exceed 15 (15%) percent per annum, shall be required to pay any interest, and in such event all interest shall be forfeited.
"(2) All laws or parts of laws in conflict herewith and all other statutory penalties for usury applicable to loans to corporations are hereby repealed.
* * * * * *
"(4) The provisions of this section shall not apply to obligations which exceed $500,000."
CMI argues that pursuant to subsection (4) passed by the legislature in 1974, there is no penalty whatsoever because the loan to Sailboat Key exceeded $500,000. We find this interpretation erroneous. First, the title of the act in no way indicates that the act was meant to repeal usury on loans to corporations.[5] Second, Section 687.11, Florida *74 Statutes (1974) is to be construed so that it is meaningful and harmonizes in all of its parts with all sections of Chapter 687, Florida Statutes. See Wilensky v. Fields, 267 So.2d 1 (Fla. 1972). Bearing this in mind, we construe subsection (4) to mean that the penalty for usury applicable to loans to corporations in the amount of $500,000 or less is forfeiture of the interest as provided in subsection (1). See Tel Service Co., supra. However, where the usurious transaction involves a loan to a corporation in excess of $500,000, then the penalty will be as provided elsewhere in Chapter 687, to wit: Section 687.04, Florida Statutes (1975), which provides a penalty of double the amount of the interest. To adopt CMI's view would be to negate subsection (1) of Section 687.11 with respect to loans in excess of $500,000 and also Section 687.03(1) and (4), Florida Statutes (1976) with respect to corporations which borrow in excess of $500,000. Finally while this appeal was pending, the Florida Supreme Court has decided this question adverse to CMI. See Woodgate Development Corporation v. Hamilton Investment Trust, 351 So.2d 14 (Fla. Supreme Court Case No. 50,027, opinion filed June 9, 1977).
In this case the interest exacted is in excess of 25% and in view of our construction of subsection (4), the question then arises of whether there is also a forfeiture of principal pursuant to Section 687.071(7), Florida Statutes (1975) effective since October 1, 1969. For the reason cited in Wilenksy v. Fields, 267 So.2d 1 (Fla. 1972), supra, we hold there is not forfeiture of the principal.
In Wilensky the parties had entered into the usurious transaction prior to the enactment of Section 687.071, Florida Statutes in 1969 and finding this statute to be criminal in nature, the Supreme Court refused to apply it retroactively. The Court reasoned:
"... Section 687.071 was enacted to provide criminal penalties where extensions of credit were made in violation of that section.
"[6] Article I, Section 10, Florida Constitution, 1968, provides that no ex post facto law shall be passed. An ex post facto law is `one which, in its operation, makes that criminal which was not so at the time the action was performed, or which increases the punishment, or, in short, which in relation to the offense or its consequences alters the situation of a party to his disadvantage.' Higginbotham v. State (Fla. 1924) 88 Fla. 26, 101 So. 233." Wilensky, supra, at 5.
Although Section 687.071, Florida Statute (1969) was unquestionably effective in January 1970 when the parties in this cause entered into their loan agreement, Section 687.11(4), Florida Statutes (1974) had not been enacted and, thus, the penalty was limited to forfeiture of interest. To hold that CMI is also subject to the penalty of forfeiture of the principal would, in essence, be giving Section 687.071, Florida Statutes (1969) retroactive effect in violation of Article I, Section 10, Florida Constitution (1968). See Wilensky, supra; Padgett v. First Fed. Sav. § L. Ass'n of Lake Worth, 297 So.2d 101 (Fla. 4th DCA 1974), cert. discharged 329 So.2d 313 (Fla. 1976). Thus, the trial judge was correct in determining the proper penalty to be a forfeiture of double the interest exacted.
CMI for its next point argues that Sailboat Key's claim is barred by the 2-year statute of limitation in that the $3,350,000 note and the $190,000 on the $740,000 note were paid on November 5, 1971, and Sailboat Key did not file its claim charging usury until December 1974. We cannot agree.
*75 The statute of limitation begins to run from the date that the last installment becomes due and payable. General Capital Corporation v. Tel Service Co., 212 So.2d 369 (Fla. 2d DCA 1968). Where a usurious contract is renewed by the giving of a renewal or substituted contract, the usury follows into and becomes a part of the latter contract. Wenck v. Insurance Agents Finance Corporation, 99 So.2d 883, 886 (Fla. 3d DCA 1958). In the case sub judice the parties entered into a two year loan agreement in 1970 which was usurious. Subsequently, they entered into a substituted contract in October 1971 and the last payment due thereunder was November 1, 1976. The usury followed into and became a part of this substituted contract under which the last payment was not due until November 1, 1976. The statute of limitation had not begun to run upon the filing of Sailboat Key's usury claim. Furthermore, the defense of usury is always available as a defense where the lender, as here, brings an action to enforce the contract. See Beekner v. L.P. Kaufman, Inc., 145 Fla. 152, 198 So. 794 (1940).
Lastly, CMI contends that the trial court erred in finding that CMI had a corrupt intent to charge more than the legal rate of interest.
The trial judge found the requisite corrupt intent on the part of CMI. There is competent substantial evidence in the record to support this finding and we cannot and shall not substitute our judgment for that of the trier of the fact. See Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Vance v. Florida Reduction Corporation, 263 So.2d 585 (Fla. 1st DCA 1972).
On cross-appeal Sailboat Key argues that the trial judge erred in not applying the penalty of forfeiture of the principal pursuant to Section 687.071(7), Florida Statutes (1969). In light of our discussion with respect to this issue, the cross-claim lacks merit.
Affirmed.
NOTES
[1] The special master found that the $740,000 note was not given for the consideration of CMI's release of its right of first refusal to provide the construction financing since CMI had already declined; but rather, in reality, was the difference between the negotiated figure of $750,000 for the repurchase of the stock and the $10,000 cash payment by Sailboat Key.
[2] 393,962.03 interest charged
 67,000.00 2% discount
 10,000.00 payment for stock
 190,000.00 payment on $740,000 note
_____________
$ 660,962.03
 x 2
_____________
$1,321,924.06

[3] which has no usury statute applicable.
[4] Financial Fed. Sav. & L. Ass'n v. Burleigh House, Inc., 305 So.2d 59 (Fla.3d DCA 1974).
[5] 74-232
"House Bill No. 3955
"AN ACT relating to the usury laws; amending 687.03 and 687.11; providing an explanation of which loans are deemed for $500,000 or more, clarifying method of calculating interest under Chapter 687 and property included with definition; relating to guarantors; and providing an effective date.
"Be It Enacted by the Legislature of the State of Florida:
* * * * * *
"Section 2. Section 687.11, Florida Statutes, is amended by adding a new subsection (4) to read:
"687.11 Interest rates; individuals secondarily liable on corporate obligations. 
"(4) The provisions of this section shall not apply to obligations which exceed $500,000."