378 So.2d 287 (1979)
NORTH AMERICAN MORTGAGE INVESTORS, a Massachusetts Business Trust, Petitioner/Cross-Respondent,
v.
CAPE SAN BLAS JOINT VENTURE, a Georgia Partnership, et al., Respondents/Cross-Petitioners.
No. 52144.
Supreme Court of Florida.
December 20, 1979.
J. Marshall Conrad of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, and Julian D. Clarkson of Holland & Knight, Fort Myers, for petitioner/cross-respondent.
*288 Ernest W. Welch of Welch & Munroe, Tallahassee, for respondents/cross-petitioners.
Guy B. Bailey, Jr. and Jesse C. Jones of Bailey & Dawes, Miami, for Cameron-Brown Investment Group.
Richard L. Lapidus of the Law Offices of Richard L. Lapidus, Miami, for Sailboat Key, Inc.
W. Robert Olive, Jr. and Hugh M. Taylor, Tallahassee, for Hamilton Investment Trust.
Thomas G. Schultz of Glass, Schultz, Weinstein & Moss, Coral Gables, for Continental Mortgage Investors.
SUNDBERG, Justice.
This case is before us by way of petition and cross-petition for writ of certiorari from a decision of the District Court of Appeal, First District, reported at 357 So.2d 416. The petition asserts conflict with Sumner v. Investment Mortgage Co., 332 So.2d 103 (Fla. 1st DCA 1976), upon the issue of whether corrupt intent by the principal to collect more than the lawful rate of interest is an essential element in proving usury where a broker's commission is collected and retained by the agent of the principal. The cross-petition asserts conflict with Continental Mortgage Investors v. Sailboat Key, Inc., 354 So.2d 67 (Fla. 3d DCA 1977), as to the proper penalty to be assessed against a lender who violates the provisions of chapter 687, Florida Statutes (1975), in a loan transaction with a corporate borrower where the obligation exceeds $500,000. The trial court determined the penalty to be forfeiture of the interest paid. Cross-petitioners maintain that Continental Mortgage Investors stands for the proposition that the penalty should be forfeiture of double the amount of the interest paid. Jurisdiction is predicated upon article V, section 3(b)(3), Florida Constitution.
While the mortgage loan transaction out of which this controversy arises is complex in the extreme, our disposition of the case renders unnecessary a detailed recitation of the facts surrounding the transaction. For our purposes it need only be stated that respondents were borrowers through a corporate vehicle from petitioner (NAMI), a real estate investment trust. The loan was for the gross sum of $4,250,000 bearing interest at a rate equal to 3 1/2% per annum over the prime rate with a ceiling of 15% per annum secured by a mortgage on real estate in Gulf County, Florida. The term of the loan was one year with provision for extension prior to maturity upon payment of a fee equal to 1/6 of 1%. The option to extend was exercised by the borrowers. The financing was procured through Sonnenblick-Goldman Corp. (SG), a mortgage broker which worked in concert with and shared a brokerage commission with a co-broker in the transaction. Sonnenblick-Goldman Advisory Corp. (SGA) acted as loan advisor to the petitioner and serviced the loan. SGA enjoyed a separate corporate existence from SG, having been incorporated some four to five months prior to the closing of the loan transaction here at issue. Before the incorporation of SGA the functions of that entity were carried on by SG on behalf of petitioner. At the time of this transaction SG and SGA shared common office facilities, and a number of SGA employees were formerly employees of SG and had performed essentially the same functions prior to the incorporation of SGA. There was also substantial interlocking stock ownership by the stockholders of SG and SGA. Furthermore, the stockholders of SG and SGA were also stockholders of petitioner, although they held a minority interest. Although SG brokers through and SGA represents other lenders, petitioner dealt exclusively through SGA. SGA derives its income solely from the lenders it represents based upon a percentage of the amount of loans outstanding. A representative of SG presented the instant loan application to a representative of SGA who, after calling for certain modifications, approved the loan application and presented it to petitioner's executive committee for acceptance.
Following the original maturity date and during the extension period exercised *289 by respondents, respondents brought suit for declaratory judgment to determine whether petitioner had violated the usury laws by charging more than 15% per annum for the loan. Pending suit, respondents paid under protest the full amount of principal and interest demanded by petitioner. The trial court found that both the broker's commission collected by SG and the extension fee must be considered interest on the loan, and that either charge would cause the interest rate to exceed 15% per annum. The trial court, in recognition of the principles enunciated in Dixon v. Sharp, 276 So.2d 817 (Fla. 1973), stated that if the only evidence upon which to find usurious intent was the agreement for and payment of the extension fee, usury would not have been proved. However, in view of its finding that petitioner was guilty of intentionally and purposefully causing the broker's commission to be collected on behalf of its agent, the trial court concluded that the extraction of both the commission and the extension fee constituted the collection of usurious interest and entered judgment against petitioner for $768,387.78, which included the commission, the extension fee and all interest collected. The District Court of Appeal, First District, affirmed, expressly approving and adopting the conclusions and reasons set forth in the final judgment of the trial court.
Petitioner raises four points for our consideration. We paraphrase them as follows: (i) whether the trial court correctly applied the "corrupt intent" requirement of Dixon v. Sharp; (ii) whether there was sufficient evidence to support a finding of corrupt intent to violate the usury statute; (iii) whether a broker's commission can be considered as interest if the lender derives no benefit therefrom; and (iv) whether the trial court pyramided inferences in order to support its findings. It is unnecessary to deal with the issues in the fashion raised by petitioner, for after a careful review of the record and the applicable law we conclude that neither is there conflict between the decision under review and Sumner v. Investment Mortgage Co., nor has the able trial judge erred in his findings of fact or conclusions of law in winding his way through a complex and thorny thicket of fact and law.
Regarding conflict. Although apparent similarities exist between this case and Sumner v. Investment Mortgage Co., there is one striking and dispositive dissimilarity. In Sumner the defendant, Investment Mortgage Company of Florida, was the lender. Service Mortgage Brokers, Inc., a subsidiary of the lender, was the broker. Service was incorporated to broker loans that previously had been brokered by Investment. The two corporate entities shared the same offices and expenses and had identical employees, stockholders, officers and directors. The interest rate charged by Investment did not exceed the legal rate. The brokerage fee collected by Service did not exceed that authorized by chapter 494, Florida Statutes (1975). The combined interest and commission, however, did exceed the legal rate of interest chargeable under section 687.03, Florida Statutes (1975). Citing to Dixon v. Sharp, the district court stated that usury is a matter of intent which must be established by clear and satisfactory evidence. It then concluded:
The trial court found that Investment did not have a corrupt intent to knowingly and willfully charge and receive an unlawful rate of interest. This finding comes to us with a presumption of correctness. Because the trial judge heard this case without a jury, we cannot disturb the finding unless it is clearly erroneous. We cannot say the trial court erred.
332 So.2d at 105. By contrast, the trial judge in the case at bar, after reviewing the relationship of the parties, found "based upon all the circumstances, ample evidence to justify a wilful and intentional violation of the usury statutes of Florida by the defendant, NAMI." Consequently, no conflicting rule of law is announced in the decision below, nor has a rule of law been misapplied to identical facts. Were it not for the conflict raised by the cross-petition, this matter would end here and the writ of *290 certiorari would be discharged as having been improvidently granted. But since the Court has authority to review the entire case once jurisdiction is established on the cross-petition, we have undertaken to review the judgment and record in the trial court in light of petitioner's assertions.
In a comprehensive thirty-four-page declaratory judgment, the trial judge reviewed the evidence and made exhaustive findings of fact and conclusions of law. Apart from questioning the sufficiency of the evidence upon which the trial judge based his conclusions, the main thrust of petitioner's argument is that the declaratory judgment was predicated upon the erroneous principle of law that where a broker who receives a commission in a loan transaction is the agent of the lender, usury will be presumed if the commission added to the interest exceeds the lawful rate. We do not agree that such a conclusion is compelled. In fact, we accept the analysis proffered by respondents.
Careful review of the declaratory judgment reflects the following analysis by the trial judge. He first recognizes that "[t]he mere payment of sums in excess of the legal rate does not necessarily amount to usury; the intention to exact an illegal sum must be present." Dixon v. Sharp, supra. Next, he considers the relationship among the parties  petitioner, SG and SGA. He concludes that the relationship between SG and petitioner is such that SG must be considered the lender's agent in this transaction. He arrives at this conclusion by determining that the role of SGA was clearly that of agent for petitioner in effecting and servicing the loan. Petitioner does not really quarrel with this characterization of SGA's status. The trial judge goes on to conclude, however, that the relationship between SGA and SG is such that the separate corporate existence of SGA must be ignored. He determines that for all intents and purposes SG had little or nothing to do with procuring the loan; that it was, in fact, structured by an employee of SGA who then induced petitioner to approve the transaction. Accordingly, the same entity was acting as agent for the borrowers and for the lender. The chancellor further inferred from all the facts and circumstances in the case that the exaction of a commission by SG was with the knowledge of petitioner. To these findings the judge applied the principle of law enunciated in a respectable line of cases commencing in 1936 to the effect that if an agent employed by the lender while acting within the scope of his authority exacts a commission for himself from the borrower, then the commission will be considered as interest in determining whether there is a violation of the usury laws of this state. See Stoutamire v. North Florida Loan Ass'n, 152 Fla. 321, 11 So.2d 570 (1943). Richter Jewelry Co. v. Schweinert, 125 Fla. 199, 169 So. 750 (1936) (on rehearing); Feemster v. Schurkman, 291 So.2d 622 (Fla. 3d DCA 1974); Applebaum v. Laham, 161 So.2d 690 (Fla. 3d DCA 1964). The latter two decisions add a refinement to the stated principle by the holding that usury will be presumed when the agent of the lender is clothed with authority to negotiate a loan on the lender's behalf, and while acting in the apparent scope of his authority, he exacts a bonus or commission which would make the loan usurious. Under such circumstances it is incumbent upon the lender to rebut the presumption that his agent acted without the scope of his authority in making the usurious charge. Feemster v. Schurkman, 291 So.2d at 628. Petitioner seizes upon the trial court's reference to these authorities to maintain that the court below ignored the requirement of Dixon v. Sharp that willful and corrupt intent by the lender must be proven be clear and satisfactory evidence. We simply do not agree.
First, the rule concerning the presumption in an agency case such as this does little more than restate the intent requirement in a usury case enunciated in Shorr v. Skafte, 90 So.2d 604, 607 (Fla. 1956):
The ignorance of the borrower is of small consequence; the important factor is the willfulness of the lender. And the matter of willfulness is not absolutely *291 closed by the bare statement of the lender that he was unconscious of wrongdoing. If such were the law the prohibition would amount to nothing.
(Emphasis supplied.) To this must be added the statement from Dixon v. Sharp that "[t]he requisite corrupt or purposeful intent ... is satisfactorily proved if the evidence establishes that the charging or receiving of excessive interest was done with the knowledge of the lender." 276 So.2d at 821.
Second, it is apparent that the trial judge did not misconceive the applicable law, for after a discourse on all the facts and circumstances surrounding the relationship of the parties and the loan transaction, he concludes that "[t]he broker's commission must be considered as interest." Then, in a separate section of the judgment entitled "Defendants Intention To Violate The Usury Laws," he cites W.B. Dunn Co. v. Mercantile Credit Corp., 275 So.2d 311 (Fla. 1st DCA 1973), for the proposition that "[w]hen the lender has intentionally and purposely done that which amounts to or results in a contract for or the exaction of usurious interest, an argument by the lender that it was not shown the lender intended to violate the usury statute is without merit." Id. at 315 (quoting from Curtiss National Bank of Miami Springs v. Solomon, 243 So.2d 475, 477 (Fla. 3d DCA 1971)). Only then does the trial court find "based upon all the circumstances, ample evidence to justify a wilful and intentional violation of the usury statutes by [petitioner]." Accordingly, we are persuaded that the chancellor applied the correct legal principles to the facts as found by him.
Although petitioner argues that the findings of the trial court on the issue of usury are not supported by the evidence and reasonable inferences derived therefrom, we conclude otherwise. The findings of fact by a chancellor should not be disturbed by an appellate court unless shown to be clearly erroneous, manifestly against the weight of the evidence or contrary to the legal effect of the evidence. Brumick v. Morris, 131 Fla. 46, 178 So. 564 (1938); Shaffran v. Holness, 102 So.2d 35 (Fla. 2d DCA 1958). Petitioner has not met the burden of demonstrating any such error on the part of the trial judge.
Recurring to the cross-petition for writ of certiorari, it is apparent that the per curiam affirmance by the district court of the trial court's declaratory judgment conflicts with Continental Mortgage Investors v. Sailboat Key, Inc., supra, concerning the proper penalty to be assessed against the lender in a case such as this. The nub of the problem rests in the construction of section 687.11, Florida Statutes (1975),[1] and in particular the significance of subsection (4) of that enactment which was added by amendment in 1974.[2] Cross-petitioners submit that the District Court of Appeal, Third District, holds in Continental Mortgage Investors v. Sailboat Key, Inc. that section 687.11(4) makes inapplicable as to loans in excess of $500,000 the penalty provisions of section *292 687.11(1) (forfeiture of interest collected), which in turn makes applicable the double interest penalty contained in section 687.04, Florida Statutes (1975).[3] This conclusion of the district court is reached by the following analysis:
CMI argues that pursuant to subsection (4) passed by the legislature in 1974, there is no penalty whatsoever because the loan to Sailboat Key exceeded $500,000. We find this interpretation erroneous. First, the title of the act in no way indicates that the act was meant to repeal usury on loans to corporations. Second, Section 687.11, Florida Statutes (1974) is to be construed so that it is meaningful and harmonizes in all of its parts with all sections of Chapter 687, Florida Statutes. See Wilensky v. Fields, 267 So.2d 1 (Fla. 1972). Bearing this in mind, we construe subsection (4) to mean that the penalty for usury applicable to loans to corporations in the amount of $500,000 or less is forfeiture of the interest as provided in subsection (1). See Tel Service Co., supra. However, where the usurious transaction involves a loan to a corporation in excess of $500,000, then the penalty will be as provided elsewhere in Chapter 687, to wit: Section 687.04, Florida Statutes (1975), which provides a penalty of double the amount of the interest. To adopt CMI's view would be to negate subsection (1) of Section 687.11 with respect to loans in excess of $500,000 and also Section 687.03(1) and (4), Florida Statutes (1976) with respect to corporations which borrow in excess of $500,000. Finally while this appeal was pending, the Florida Supreme Court has decided this question adverse to CMI. See Woodgate Development Corporation v. Hamilton Investment Trust, 351 So.2d 14 [Fla. Supreme Court, opinion 1977].
354 So.2d at 73-74 (footnote omitted). Implicit in the above analysis is a determination that the provisions of section 687.04 relating to forfeiture of double the amount of interest collected retain their vitality as to a corporate borrower although determined in Tel Service Co. v. General Capital Corp., 227 So.2d 667 (Fla. 1969), to have been repealed by the enactment of section 687.11 in 1965.[4] Cross-petitioners assert, as they must, that section 687.11(4), enacted subsequent to the Tel Service Co. case, repealed section 687.11(1) insofar as loans exceeding $500,000 are concerned. They maintain, then, that in the absence of section 687.11(1) the controlling provision must be 687.04 relating to a penalty double the amount of interest collected, citing Woodgate Development Corp. v. Hamilton Investment Trust, 351 So.2d 14 (Fla. 1977), as authority for this proposition.
Cross-petitioners are in error on two counts. First, Woodgate Development contains no such holding. The sole issue in that case was whether section 687.11(4) effectively removed all interest limitations on loans to corporate borrowers in excess of $500,000. After reviewing the statutory history of chapter 687, Florida Statutes, from 1965 forward and carefully considering the title to the act creating 687.11(4), *293 the Court concluded that the intent of that subsection was only to remedy the inconsistency between permissible rates payable by an individual as maker (section 687.02) as contrasted to an individual secondarily liable (section 687.11(1)), on loans in excess of $500,000.
Second, the legislative history of section 687.04 juxtaposed against section 687.11 as interpreted by this Court in Tel Service Co. simply does not support the position of cross-petitioners. A brief exposition of the history of chapter 687, Florida Statutes, is required to demonstrate the error in analysis by cross-petitioners and the district court in Continental Mortgage Investors v. Sailboat Key, Inc.
In 1965, sections 687.02 and 687.03, Florida Statutes, defined usurious contracts and the maximum lawful rates of interest. Section 687.04 provided that any person willfully violating the provisions of section 687.03 should forfeit the entire interest contracted to be charged and should forfeit double the amount of the interest taken or reserved. Section 687.11 was enacted in 1965. It contained three subsections and an effective date.[5] Only subsections (1) and (2) are pertinent to the issue here under consideration. The first clause of subsection (1) provided that no individual secondarily liable on any corporate obligation would be required to pay interest in excess of ten percent per annum and any interest claimed in excess of that amount would be forfeited. The second clause of subsection (1) provided that no corporation would be required to pay any interest where the interest claimed exceeded fifteen percent per annum, and in such event all interest would be forfeited. Subsection (2) provided that all laws in conflict with section 687.11 and all statutory penalties for usury applicable to loans to corporations were repealed.
In 1967, the legislature did not amend chapter 687, Florida Statutes. Accordingly, all sections of the statute including 687.04 and 687.11 were reenacted as the official law of the state in accordance with section 11.2421, Florida Statutes (1967). In 1969, the legislature enacted section 687.071 which repealed section 687.07 and substituted different penalties for loans exceeding 25% per annum. However, section 687.04 and section 687.11 were carried forward unchanged from the official 1967 statutes and reenacted into the official 1969 statutes. It is at this juncture that Tel Service Co. intervenes. In that decision this Court quoted subsections (1) and (2) of section 687.11, emphasizing the second clause of subsection (1) dealing with corporations, and then concluded:
It is readily apparent that the emphasized portion of paragraph (1) can only be construed as affecting (sic) the repeal, as to usurious loans to corporations, of all conflicting penalty and forfeiture provisions embraced in F.S. Section 687.04 and 687.07, F.S.A. Thus the only penalty recoverable in this case is the forfeiture of all interest paid by the corporate borrower, i.e., the sum of $125,912.65, as was found by the District Court.
227 So.2d at 672. It is significant that this conclusion was reached at a point in time when both sections 687.04 and 687.11 had been carried forward twice in the customary statutory revision process. It is also important to note what portion of section 687.04 was held by the Court to be repealed by section 687.11(1). It was only the "conflicting penalty and forfeiture provisions embraced in [687.04]" (emphasis supplied). The double interest provision of section 687.04 as applied to corporations conflicted with section 687.11(1) and, therefore, that portion of the section was repealed. As a consequence, section 687.04 retained its vitality as to individuals and as to corporations, but as to the latter the double interest recovery was eliminated.
Continuing the historical development of chapter 687, we see that in 1970 the legislature carried forward all sections of that chapter with only an insignificant amendment to section 687.03. In 1973, however, the legislature amended section 687.02 to provide that an individual could be charged *294 up to 15% interest per annum on loans exceeding $500,000 in principal amount. The provisions of section 687.11(1) placing a limit of 10% on individuals secondarily liable on corporate indebtedness remained unchanged. This created the anomalous situation referred to in Woodgate Development which was addressed by the 1974 session of the legislature and resulted in the enactment of subsection (4) of section 687.11:
(4) The provisions of this section shall not apply to obligations which exceed $500,000.
To the argument that this amendment removed all interest limitations on loans to corporate borrowers in excess of $500,000 the Court in Woodgate Development responded: "However, Sections 687.02, 687.03, and 687.04 do now and always have provided penalties for the charging of interest in excess of certain rates." 351 So.2d at 16. But what are those penalties applicable to loans to corporate borrowers now contained in section 687.04? Cross-petitioners and the District Court of Appeal, Third District, respond that it is double the amount of the interest unlawfully collected. This assertion, however, ignores the decision in Tel Service Co. which held in 1969 that those provisions were repealed as to corporate borrowers. Furthermore, it can hardly be contended that the decision in Woodgate Development supports cross-petitioners' position when Tel Service Co. was neither cited nor discussed.
If the double interest penalty of section 687.04 related to corporate borrowers was repealed in 1965 with enactment of section 687.11, what has occurred since that date to revive it? We know that it cannot be its continued inclusion in the revision process, for that was the state of facts existing at the time of the Tel Service Co. decision. Can the enactment of chapter 74-232, Laws of Florida, which added subsection (4) to section 687.11 accomplish such a feat? We think not.
The argument, of course, is that the continued reenactment of both sections 687.04 and 687.11 up until 1974 may have cancelled out the double interest provisions of section 687.04 related to corporate borrowers because of the repealer language in section 687.11, but the enactment of section 687.11(4) in that year immobilized the repealer provisions as to loans in excess of $500,000. The argument ignores two factors. The first is that this Court in Woodgate Development held that the purpose of section 687.11(4) was limited to curing the discrepancy in treatment between individuals as makers and endorsers of obligations. Consequently, the balance of section 687.11 remains viable except as to the ten percent limitation upon individuals secondarily liable on obligations which exceed $500,000.
But even assuming the broader application of section 687.11(4) contended for by cross-petitioners, a second factor comes into play  the law respecting repeal by implication and revival of repealed statutes. As a result of our opinion in Tel Service Co., it is beyond peradventure that the double interest provision of section 687.04 related to corporate borrowers was repealed. Even if section 687.11(4) served to repeal all of section 687.11(1)[6] as to loans in excess of $500,000, it could have repealed section 687.11(2) (itself a repealer) only by implication. Repeal by implication is not favored in Florida and such a construction will be indulged in only where certain specific circumstances, not present here, occur. See Mann v. Goodyear Tire and Rubber Co., 300 So.2d 666 (Fla. 1974); Richey v. Town of Indian River Shores, 337 So.2d 410 (Fla. 4th DCA 1976); City of Punta Gorda v. McSmith, Inc., 294 So.2d 27 (Fla.2d DCA 1974); Jet Air Freight v. Jet Air Freight Delivery, Inc., 264 So.2d 35 (Fla.3d DCA 1972).
Furthermore, even if section 687.11(4) were construed to repeal subsections 687.11(1) and (2) as to loans in excess of $500,000, such would not revive the formerly repealed provision of section 687.04 dealing with double interest penalties as to corporate borrowers. Section 2.04, Florida Statutes (1975), provides:

*295 No statute of this state which has been repealed shall ever be revived by implication; that is to say, if a statute be passed repealing a former statute, and a third statute be passed repealing the second, the repeal of the second statute shall in no case be construed to revive the first, unless there be express words in the said third statute for this purpose.
Accordingly, we hold that the appropriate penalty for exacting interest at an unlawful rate from a corporate borrower is forfeiture of the interest reserved or collected by the lender regardless of the principal amount of the obligation. This construction of all of the interrelated sections of chapter 687, Florida Statutes (1975), harmonizes, reconciles and gives a field of operation to each, which it is our duty to do. State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68 (Fla. 1975); State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971).
For the reasons expressed, the petition for writ of certiorari is discharged. The cross-petition for writ of certiorari is granted, but the decision of the District Court of Appeal, First District, here under review is approved. The decision of the District Court of Appeal, Third District, in Continental Mortgage Investors v. Sailboat Key, Inc. is disapproved.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
NOTES
[1] § 687.11, Fla. Stat. (1975);

687.11 Interest rates; individuals secondarily liable on corporate obligations. 
(1) No individual secondarily liable as endorser, guarantor, surety, or otherwise on any corporate obligation shall be required, in any proceeding for collection of interest in the courts of this state, to pay any interest in excess of 10 percent per annum, and any interest claimed therein against such individual in excess of 10 percent per annum shall be forfeited; and no corporation, in any such proceeding in the courts of this state where the interest is proven to exceed 15 percent per annum, shall be required to pay any interest, and in such event all interest shall be forfeited.
(2) All laws or parts of laws in conflict herewith and all other statutory penalties for usury applicable to loans to corporations are hereby repealed.
(3) The provisions of this act shall not be construed to repeal, modify or limit any or either of the special provisions of existing statutory law creating exceptions to the general law governing interest and usury and specifying the interest rates and charges which may be made pursuant to such exceptions, including but not limited to those exceptions which relate to banks, Morris Plan banks, discount consumer financing, small loan companies and domestic building and loan associations.
(4) The provisions of this section shall not apply to obligations which exceed $500,000.
[2] Ch. 74-232, Laws of Florida.
[3] § 687.04, Fla. Stat. (1975):

687.04 Penalty for usury, not to apply to transferee of negotiable paper unless usury appears on face.  Any person, or any agent, officer or other representative of any person, willfully violating the provisions of § 687.03 shall forfeit the entire interest so charged, or contracted to be charged or reserved, and only the actual principal sum of such usurious contract can be enforced in any court in this state, either at law or in equity; and when said usurious interest is taken or reserved, or has been paid, then and in that event the person, who has taken or reserved, or has been paid, either directly or indirectly, such usurious interest, shall forfeit to the party from whom such usurious interest has been reserved, taken or exacted in any way, double the amount of interest so reserved, taken or exacted; provided, however, that this shall not apply to a bona fide endorsee or transferee of negotiable paper purchased before maturity, unless the usurious character should appear upon its face, or that the said endorsee or transferee shall have had actual notice of the same before the purchase of such paper, but in such event double the amount of such usurious interest may be recovered after payment, by action against the party originally exacting the same, in any court of competent jurisdiction in this state, together with an attorney's fee, as provided in § 687.06.
[4] Ch. 65-299, Laws of Florida.
[5] Ch. 65-299, Laws of Florida.
[6] In which event the forfeiture of single interest provision of section 687.04 would apply because it is duplicative of the penalty expressed in 687.11(1).