Dr. Elton J. Gissendanner Executive Director Department of Natural Resources Marjory Stoneman Douglas Building 3900 Commonwealth Boulevard Tallahassee, Florida 32303
Dear Dr. Gissendanner:
This is in response to your request for an opinion on the following question:
 DOES FLORIDA LAW REQUIRE THE BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND TO OBTAIN AND HOLD TITLE TO ALL REAL PROPERTY NOW HELD IN THE NAMES OF HISTORIC PRESERVATION BOARDS CREATED PURSUANT TO CH. 266, F.S.?
You make the foregoing inquiry on behalf of the Board of Trustees of the Internal Improvement Trust Fund, to wit: The Governor, the Secretary of State, the Attorney General, the Comptroller, the State Treasurer, the Commissioner of Education, and the Commissioner of Agriculture and their successors in office (hereafter Board of Trustees). Section 253.02(1), F.S. See, s.253.002, F.S., authorizing the Division of State Lands of the Department of Natural Resources to perform all staff duties and functions pertaining to the acquisition, administration and disposition of state lands, title to which is or will be vested in the Board of Trustees; and AGO 80-10. In your letter of inquiry, you note that several historic preservation boards created under Ch. 266, F.S., currently hold title to historic property in the name of the historic preservation board itself. Other such boards acquire property in the name of the Board of Trustees and procure a lease from the Trustees for historic preservation purposes. Typical property at issue includes buildings of special historical importance.
Chapter 266, F.S., comprises seven distinct parts, each of which creates a certain historic preservation board or boards: Part I creates the Historic St. Augustine Preservation Board of Trustees; Part II creates the Historic Pensacola Preservation Board of Trustees; Part III creates the Historic Tallahassee Preservation Board of Trustees; Part IV creates the Historic Florida Keys Preservation Board of Trustees; Part V creates the Historic Palm Beach County Preservation Board of Trustees; Part VI creates the Historic Tampa-Hillsborough County Preservation Board of Trustees; Part VII creates the Historic Broward County, Volusia County and Flagler County Preservation Boards of Trustees.
Each of said boards is created "within the Department of State." See, ss. 266.01; 266.101; 266.110; 266.201; 266.301; 266.401 and 266.501, F.S., respectively. See also, ss. 266.410 and 266.507, F.S., setting forth the legal and administrative relationship between the Secretary of State and the Historic Preservation Boards of Trustees established pursuant to Ch. 266, F.S., for St. Augustine, Pensacola, Tallahassee, Key West, Broward County, Tampa-Hillsborough County, and Volusia and Flagler Counties. The foregoing boards independently exercise their powers, duties and functions as prescribed by law, but are for the purposes of general guidance, service, or support administratively assigned to the Secretary of State and subject to his budget review and approval authority. See, AGO 81-67 which noted that the Legislature had not designated any budget review or approval authority over the Historic Boca Raton Preservation Board of Commissioners to the Secretary of State or placed that board "administratively" under the direct supervision of the Secretary of State for those purposes; thus, the Boca Raton Board appeared to be a "commission" as defined by s. 20.03(10), F.S. (1981) and exercised its delegated legislative or quasi-legislative powers independently of the Secretary of State.
Each of the foregoing historic preservation boards is empowered to acquire, hold, lease, and dispose of real and personal property or any interest therein for its authorized purpose. See, respectively ss. 266.06(5); 266.106(5); 266.115(5); 266.206(5); 266.306(5); 266.406(5) and 266.506(5), F.S. Moreover, each historic preservation board is accorded the power to "acquire in its own name by purchase, grant, devise, gift, or lease, on such terms and conditions and in such manner as it deems necessary or expedient, or by condemnation . . . real property or rights or easements therein or franchises necessary or convenient for its purposes. . . ." (e.s.) Sections 266.06(7); 266.106(7); 266.115(7); 266.206(7); 266.306(7); 266.406(7) and 266.506(7), F.S. See also, ss. 266.01(1); 266.06(11); 266.101(1); 266.106(10); 266.110(1); 266.115(10); 266.201(1); 266.206(10); 266.301(1); 266.306(10); 266.401(1); 266.406(10); 266.501(1); 266.506(9), F.S., granting to the respective historic preservation boards, inter alia, the power to acquire, operate, maintain and improve objects of antiquarian interest and certain real or personal property for the use, benefit, education, recreation, enjoyment and general welfare of the people of this state and nation. Cf., AGO 86-6 which concluded that the Historic Pensacola Preservation Board of Trustees is authorized to enter into a lease-purchase agreement for the purpose of acquiring a museum collections storage warehouse so long as no lien or other encumbrance on such warehouse exists when the Board acquires title to the warehouse, unless sufficient funds are deposited in trust to pay and redeem the lien or encumbrance.
Chapter 253, F.S., inter alia, sets forth the powers and duties of the Board of Trustees with regard to the acquisition and disposal of state lands, and generally makes the Board exclusive title holder of most state lands. See, s. 253.03(1), F.S., providing that the Board of Trustees is "vested and charged with the acquisition, administration, management, control, supervision, conservation, protection, and disposition of all lands owned by, or which may hereafter inure to, the state or any of its agencies, departments, boards, or commissions" excluding certain lands not pertinent to the instant inquiry. And see, s. 253.023(2), F.S., which establishes within the Department of Natural Resources the Conservation and Recreation Lands Trust Fund. Section 253.023(3), F.S., provides in part pertinent to your inquiry:
 The Governor and Cabinet, sitting as the Board of Trustees of the Internal Improvement Trust Fund, may allocate moneys from the fund in any one year to acquire the fee or any lesser interest in land in each of the following categories:
* * *
 4. For preservation of significant archaeological or historical sites.
Section 253.03(4), F.S., provides:
 It is the intent of the Legislature that, when title to any lands is in the state, with no specific agency authorized by the Legislature to convey or otherwise dispose of such lands, the Board of Trustees of the Internal Improvement Trust Fund be vested with such title and hereafter be authorized to exercise over such lands such authority as may be provided by law. (e.s.)
Historic preservation boards created pursuant to Ch. 266, F.S., appear to comprise such agencies authorized by the Legislature to convey and otherwise dispose of historic properties. See, AGO 81-67, supra; s. 20.03(11), F.S. ("agency" as context requires means official, officer, commission, authority, council, committee, department, division, bureau, board, section, or another unit or entity of government). Cf., ss. 119.011(2);267.021(3), F.S.
However, subsection (6) of s. 253.03, F.S., directs that
 [c]ommencing September 1, 1967, all land held in the name of the state or any of its boards, departments, agencies, or commissions shall be deemed to be vested in the Board of Trustees of the Internal Improvement Trust Fund for the use and benefit of the state. By October 1, 1967, any board, commission, department, or agency holding title to any state lands used for public purpose shall execute all instruments necessary to transfer such title to the Board of Trustees of the Internal Improvement Trust Fund for the use and benefit of the state, except lands which reverted to the state under the provisions of chapter 18296, Laws of Florida, 1937, commonly known and referred to as the "Murphy Act." (e.s.)
An apparent conflict is thus evident between the provisions of subsections (4) and (6) of s. 253.03, F.S. Although s. 253.03(4), F.S., purports to vest title to state lands in the Board of Trustees, where title to such land is in the state and no specific agency has been authorized by the Legislature to convey or dispose of such lands, subsection (6) directs that all lands held in the name of the state or any of its boards, departments, agencies or commissions are deemed to be vested in the Board of Trustees and that any board, commission, department or agency holding title to state lands used for a public purpose, except Murphy Act lands, must convey title to the Trustees by October 1, 1967.
In State v. Gale Distributors, Inc., 349 So.2d 150, 153
(Fla. 1977), the Supreme Court set forth a "cardinal" rule of statutory construction "that the entire statute under consideration must be considered in determining legislative intent, and effect must be given to every part of the section and every part of the statute as a whole." See also, Wilensky v. Fields, 267 So.2d 1 (Fla. 1972) (statute must be construed so that it is meaningful in all of its parts); Weitzel v. State,306 So.2d 188 (1 D.C.A. Fla., 1974), case dismissed, 322 So.2d 922
(Fla. 1975) (words, phrases, clauses, sentences and paragraphs of statute may not be construed in isolation); Terrinoni v. Westward Ho!, 418 So.2d 1143 (1 D.C.A. Fla., 1982) (statutory language not assumed to be superfluous); State v. Robarge, 450 So.2d 855
(Fla. 1984). Moreover, it is the duty of courts, where possible, to adopt the construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act. Woodgate Development Corporation v. Hamilton Investment Trust, 351 So.2d 14
(Fla. 1977); cf., North American Mortgage Investors v. Cape San Blas Joint Venture, 378 So.2d 287 (Fla. 1979). Statutory provisions are regarded as in pari materia where enacted as parts of the same act. Major v. State, 180 So.2d 335, n. 1 (Fla. 1965); Ivester v. State, 398 So.2d 926 (1 D.C.A. Fla., 1981), pet. for rev. den.,412 So.2d 470 (Fla. 1982), aff'd., 429 So.2d 1271 (1 D.C.A. Fla., 1983), pet. for rev. den., 440 So.2d 352 (Fla. 1983) (statutes that are a part of a single act must be viewed in pari materia). And see, State v. Putnam County Development Authority, 249 So.2d 6
(Fla. 1971) (Legislature cannot be charged with enacting contradictory provisions in same act); Speights v. State,414 So.2d 574 (1 D.C.A. Fla., 1982) (fact that statutory provision had their origin in same enactment required district court of appeal to read them in pari materia and to harmonize them both). Subsections (4) and (6) of s. 253.03, F.S., were adopted by the Legislature in the same enactment. See, s. 2, Ch. 67-2236, Laws of Florida, which amended s. 253.03, and created subsections (4) and (6). The foregoing authorities direct that ss. 253.03(4) and (6), F.S., must be read in pari materia and harmonized with each other.
Accordingly, while s. 253.03 reflects a legislative direction generally to vest the Board of Trustees with title to most lands held in the name of the state or any of its boards, commissions, departments or agencies by directing that such entities holding title to any state lands transfer title to such lands to the Board; in order to give effect to subsection (4) and considering the provisions of Ch. 266, F.S., which specifically authorize the historic preservation boards to acquire property in their own names, I cannot conclude that the Legislature in s. 253.03
intended to divest title from boards specifically authorized to convey or otherwise dispose of state lands and to acquire real property in their own names.
In reaching such a conclusion, I am aware that in the case of the St. Augustine Historical Restoration and Preservation Commission and the Pensacola Historical Restoration and Preservation Commission, the authority to acquire real property in their own names was enacted prior to the passage of Ch. 67-2236, Laws of Florida, supra, which was passed in special session. See, respectively Ch. 59-521, Laws of Florida, creating the St. Augustine Historical Restoration and Preservation Commission, specifically subsection 6(5), which grants the Commission the power "[t]o acquire, hold, rent, lease, and dispose of real and personal property or any interest therein for its authorized purpose," and subsection 6(7) authorizing the Commission to acquire real property in its own name; and Ch. 67-303, Laws of Florida, creating the Pensacola Historical Restoration and Preservation Commission, specifically subsections 6(5) and 6(7).
Each historic preservation board enacted pursuant to Ch. 266, F.S., and subsequent to Ch. 59-521 and Ch. 67-303, Laws of Florida, however, has been granted substantially the same powers as the St. Augustine Historical Restoration and Preservation Commission and the Pensacola Historical Restoration and Preservation Commission. See, respectively, Ch. 70-335, Laws of Florida, creating the Historic Tallahasee Preservation Board of Trustees; Ch. 72-259, Laws of Florida, creating the Historic Key West Preservation Board of Trustees; Ch. 74-265, Laws of Florida, creating the Historic Boca Raton Preservation Board of Commissioners (Ch. 84-219, Laws of Florida, renamed the foregoing board the Historic Palm Beach County Preservation Board of Trustees); Ch. 75-188, Laws of Florida, creating the Historic Tampa/Hillsborough County Preservation Board of Trustees; Ch. 77-263, Laws of Florida, creating the Historic Broward County Preservation Board of Trustees and the Historic Volusia County and Flagler County Preservation Board of Trustees. To conclude that the foregoing historic preservation boards do not possess the authority to acquire real property in their own names would render such language meaningless. Cf., Sharer v. Hotel Corporation of America, 144 So.2d 813 (Fla. 1962); Dickinson v. Davis,224 So.2d 262 (Fla. 1969) (it is never to be presumed that Legislature intended to enact purposeless or useless legislation). There is a presumption that statutes enacted later in time are passed with knowledge of prior existing laws, and that the Legislature does not intend to keep contradictory enactments on the books or to repeal a law without expressing an intention to do so. Woodgate Development Corporation v. Hamilton Investment Trust, supra; Littman v. Commercial Bank Trust Company, 425 So.2d 636 (3 D.C.A. Fla., 1983). The construction that is preferred is one which gives each statute a field of operation, rather than have one statute rendered meaningless. City of Punta Gorda v. McSmith, Inc., 294 So.2d 27 (2 D.C.A. Fla., 1974); Carcaise v. Durden,382 So.2d 1236 (5 D.C.A. Fla., 1980), pet. for rev. den.,389 So.2d 1108 (Fla. 1980).
Accordingly, based upon the foregoing, I am of the opinion that the Board of Trustees of the Internal Improvement Trust Fund is not required to obtain and hold title to all real property now held in the names of historic preservation boards created pursuant to Ch. 266, F.S. The Legislature, however, may wish to reexamine this matter in order to clarify its intent with respect to these statutes.
In sum, it is my opinion, until legislatively clarified or judicially determined to the contrary, that the historic preservation boards created pursuant to Ch. 266, F.S., are authorized to acquire title to real property in their own names and that the Board of Trustees of the Internal Improvement Trust Fund is not required to obtain and hold title to all real property now held in the names of the historic preservation boards created pursuant to Ch. 266, F.S.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General